37 F.3d 1531
 308 U.S.App.D.C. 404
 JERSEY SHORE BROADCASTING CORPORATION, Appellant,
v.
FEDERAL COMMUNICATIONS COMMISSION, Appellee.
Seashore Broadcasting Corporation and Manahawkin
Communications Corporation, Intervenors.
 Nos. 93-1253, 93-1260,
93-1649 and 93-1650.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Sept. 12, 1994.
Decided Nov. 1, 1994.
Rehearing Denied Dec. 9, 1994 in No. 93-1253.
 
 Appeals from Orders of the Federal Communications Commission.
 Alan C. Campbell, Washington, DC, argued the cause for appellants. With him on the briefs was David A. Irwin, Washington, DC. Lawrence Roberts, Washington, DC, entered an appearance for appellant Jersey Shore Broadcasting Corp.
 Gregory M. Christopher, Counsel, F.C.C., Washington, DC, argued the cause for appellee. On the brief for appellee were William E. Kennard, Gen. Counsel, Daniel M. Armstrong, Associate Gen. Counsel, and C. Grey Pash, Jr., Counsel, F.C.C., Washington, DC.
 Richard M. Riehl, Washington, DC, argued the cause and filed the brief for intervenor Manahawkin Communications Corp. On the brief for intervenor Seashore Broadcasting Corp. was William D. Silva, Washington, DC.
 Before SILBERMAN, SENTELLE, and ROGERS, Circuit Judges.
 Opinion for the Court filed by Circuit Judge SENTELLE.
 SENTELLE, Circuit Judge:
 
 
 1
 Jersey Shore Broadcasting Corporation ("Jersey Shore") and Press Broadcasting Company ("Press") appeal from Federal Communications Commission orders rejecting a settlement agreement among parties to a comparative licensing proceeding for a new FM radio station. Jersey Shore and Press were two of the original twelve applicants for the station. Prior to the settlement agreement, an FCC Administrative Law Judge ("ALJ") dismissed applications filed by Jersey Shore as "inconsistent applications" under 47 C.F.R. Sec. 73.3518 (1993). In an effort to re-enter the comparative licensing proceeding, Press negotiated with another applicant, LD Broadcasting, to be substituted on the LD Broadcasting application. The remaining parties to the comparative licensing proceeding thereafter agreed to a settlement in which Press would be awarded the construction permit for the station, while Jersey Shore would hold an option to acquire the station subsequently. Although the ALJ and the FCC Review Board approved the settlement, the full Commission reversed, holding that Press and Jersey Shore could not accomplish through a creative settlement agreement that which the inconsistent application rule directly prohibits. Press and Jersey Shore challenge that decision as an arbitrary and capricious agency action. Because we find that the Commission's decision is a reasonable attempt to protect agency processes, we affirm.
 
 I. BACKGROUND
 
 2
 In January 1990, twelve parties, including appellants Jersey Shore and Press, filed applications for a new FM station, Channel 289B1, in Manahawkin, New Jersey. At the time Press filed its application, it had pending in another proceeding a petition for reconsideration challenging the dismissal of its application for an FM station in Ocean Acres, New Jersey. Similarly, on the same day Jersey Shore filed its application for the Manahawkin station, it filed another application for a station in Tuckerton, New Jersey. The Manahawkin applications were designated for a hearing to an FCC ALJ. Seashore Broadcasting, licensee of a station located twenty miles north of Manahawkin, filed a petition to deny Jersey Shore's application. Seashore argued that Jersey Shore's Manahawkin application violated the inconsistent application rule, 47 C.F.R. Sec. 73.3518 (1993), which provides:
 
 
 3
 While an application is pending and undecided, no subsequent inconsistent or conflicting application may be filed by or on behalf of or for the benefit of the same applicant, successor or assignee.
 
 
 4
 After designation for hearing but before a Hearing Designation Order ("HDO") issued, the original applicants reached a settlement agreement in which Press would obtain the construction permit for the Manahawkin station and Jersey Shore would hold an option to acquire the new facility from Press. Subsequently, however, the ALJ issued the Manahawkin HDO dismissing the applications of both Press and Jersey Shore as inconsistent applications under 47 C.F.R. Sec. 73.3518. In re Atlantic Radio Communications, Inc., 6 FCCR 4716, 4717-18 (1991). The ALJ held that Press could not own both the Ocean Acres station, for which a petition for reconsideration was pending, and the Manahawkin station under applicable multiple ownership rules, and that Jersey Shore's attempt to prosecute simultaneously the Tuckerton and Manahawkin applications violated the inconsistent application rule.
 
 
 5
 After the August 6, 1991, issuance of the HDO, the original applicants submitted a joint settlement agreement to the ALJ, accommodating the dismissal of the original Press application by Press' agreement with another applicant, LD Broadcasting Limited Partnership, to substitute as applicant on its application. The ALJ concluded that he did not have jurisdiction over the Press-Jersey Shore option agreement because those applicants had been dismissed. He therefore referred that portion of the agreement to the FCC Mass Media Bureau. The ALJ approved the balance of the settlement agreement, including the substitution of Press for LD Broadcasting. Subsequently, the Mass Media Bureau approved the Press-Jersey Shore option agreement.
 
 
 6
 Seashore filed a request to intervene and a consolidated opposition to the joint settlement proposal before the ALJ. The ALJ dismissed Seashore's petition to intervene and consolidated opposition as moot in light of his prior approval of the settlement agreement. Seashore filed an appeal of the ALJ order approving the settlement agreement and a petition to intervene in the Manahawkin proceeding with the FCC Review Board. The Review Board held that Seashore's petition to intervene was untimely under 47 C.F.R. Sec. 1.223 (1993), which provides that petitions to intervene must be filed within thirty days after publication of the hearing issues. Seashore's petition was tardy by nearly one and one-half months. In re Atlantic Radio Communications, Inc., 7 FCCR 486, 487 (1992). The Review Board further reasoned that even if the petition were timely filed Seashore could not qualify as a party to object to the ALJ order because Seashore's sole concern was the denial of Jersey Shore's application. Since the Press-Jersey Shore option agreement was not before the ALJ, Seashore could not have party status to challenge the ALJ's decision. Id. After an unsuccessful petition for reconsideration, Seashore sought review by the full Commission of both the Review Board and the Mass Media Bureau decisions. In separate orders, the Commission reversed both the Review Board and the Mass Media Bureau.
 
 
 7
 With respect to the Review Board order, the Commission concluded that the Board should have considered the merits of Seashore's appeal. Seashore established its status as a party in interest in light of its original petition to deny Jersey Shore's application. In re Atlantic Radio Communications, Inc., 7 FCCR 5105, 5105-06 (1992). It retained that status for purposes of objecting to the Press-Jersey Shore settlement agreement. Consequently, the Review Board should have applied the time frame for appeals by "parties" of any final ruling under 47 C.F.R. Sec. 1.302 (1993), not for petitions to intervene under 47 C.F.R. Sec. 1.223. 47 C.F.R. Sec. 1.302, governing appeals from a final ruling by a presiding officer, provides:
 
 
 8
 (a) If the presiding officer's ruling terminates a hearing proceeding, any party to the proceeding, as a matter of right may file an appeal from that ruling within 30 days after the ruling is released.
 
 
 9
 (b) Any party who desires to preserve the right to appeal shall file a notice of appeal within 10 days after the ruling is released....
 
 
 10
 Under this rule, Seashore's appeal was timely filed. 7 FCCR at 5106, 5107 n. 10.
 
 
 11
 On the merits of Seashore's appeal, the Commission held that proper application of the inconsistent application rule rendered the agreement through which Press would acquire the construction permit and Jersey Shore would retain an option to acquire the station void. The Commission reasoned that a violation of the inconsistent application rule, which occurs upon the act of filing, could not be undone. The ALJ and Review Board decisions "permit[ ] the parties to accomplish through a creative settlement agreement what they could not have accomplished directly through the application process." Id. at 5106. The Commission concluded that its precedent extended to the current situation "so that dismissal of an application for violation of 47 C.F.R. Sec. 73.3518 precludes the applicant from further participation in a proceeding, including participation in any settlement." Id. (citing Big Wyoming Broadcasting Corp., 2 FCCR 3493 (1987)). While this result may tax Commission resources, it reasoned that "we must do so to avoid future abuse of 47 C.F.R. Sec. 73.3518 and to protect the integrity of our rules generally." Id. Finally, in a related order, the Commission set aside the Mass Media Bureau's approval of the Press-Jersey Shore option agreement. In re Atlantic Radio Communications, Inc., 7 FCCR 7205 (1992).
 
 
 12
 Following the FCC's disallowance of the settlement agreement and remand for further proceedings, the remaining parties to the licensing proceeding attempted to negotiate another settlement. A partial settlement, which provided, in part, for the dismissal of the LD Broadcasting application, was approved by the ALJ.
 
 
 13
 Press and Jersey Shore appeal the decisions of the Commission effectively dismissing them from the proceedings, arguing that the Commission wrongly granted party status to Seashore, and therefore erred in reaching the merits of its appeal. They contend that the FCC's grant of party status to Seashore and its ultimate holding that the Manahawkin settlement agreement violated 47 C.F.R. Sec. 73.3518 are arbitrary, capricious and an abuse of discretion. Thus, this court should find the Commission's decisions unlawful. For reasons set out more fully below, we disagree.
 
 II. DISCUSSION
 
 14
 A. Threshold Considerations: Standing and Exhaustion.
 
 
 15
 Seashore asserts that this appeal should not be heard because appellants do not have standing and have not exhausted their administrative appeals. Specifically, it argues, the LD Broadcasting application no longer exists; therefore, because Press no longer has an application to be prosecuted, this court cannot redress any injury that might have been suffered by appellants. Consequently, appellants cannot establish Article III standing. Further, because appellants did not subsequently seek a stay of the licensing proceeding so that Press might litigate its substitution agreement with LD Broadcasting, they did not properly exhaust their administrative remedies. While these arguments are not frivolous, we hold that appellants have crossed the standing and exhaustion thresholds.
 
 
 16
 In order to establish Article III standing to appeal this Commission action, appellants must establish: (1) that they have suffered a concrete and particularized "injury in fact" as the result of the agency decision; (2) that the injury is fairly traceable to the challenged decision; and (3) that the injury is likely to be redressed by a favorable decision by this court. Lujan v. Defenders of Wildlife, --- U.S. ----, ----, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992). Appellants have satisfied these standards. Press and Jersey Shore suffer injuries which are fairly traceable to the Commission decision. As a direct result of the Commission decision, each is denied the ability to obtain the Manahawkin station through the settlement agreement. Additionally, as the FCC agrees in its brief, this court could redress those injuries by remanding to the Commission with instructions either to reinstate the settlement agreement or to allow Press and Jersey Shore to file nunc pro tunc applications with the Commission.
 
 
 17
 Seashore's exhaustion argument is equally unavailing. The exhaustion doctrine prescribes that "no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 50-51, 58 S.Ct. 459, 463, 82 L.Ed. 638 (1938). It serves three distinct purposes: (1) preserving the autonomy of the agency by allowing it to apply its expertise and to correct its own errors and by discouraging the deliberate flouting of administrative processes; (2) aiding judicial review by allowing for the development of a factual record; and (3) promoting judicial and administrative efficiency by prohibiting repeated interruptions of agency proceedings and by decreasing the need for judicial decision. Athlone Industries, Inc. v. Consumer Product Safety Comm'n, 707 F.2d 1485, 1488 (D.C.Cir.1983). In the present case, none of these three purposes would be served by requiring appellants to seek a stay of the remanded proceedings. Appellants have respected administrative processes throughout these proceedings, filing petitions for reconsideration of each final decision. Consequently, the Commission has had the opportunity to consider appellants' arguments and to develop a sufficient factual record. Finally, administrative efficiency may actually be disserved by requiring further exhaustion here. Such a requirement would have the undesirable effect of clogging Commission proceedings with contingent appeals and a multitude of requests for stays for no other reason than to satisfy the exhaustion doctrine. Under these circumstances, the exhaustion doctrine requires no more than appellants have already done.
 
 
 18
 B. Seashore's Party Status.
 
 
 19
 When an agency interprets its own administrative regulation promulgated under the statute charged to its administration, this court owes a high degree of deference to that interpretation. Udall v. Tallman, 380 U.S. 1, 16-17, 85 S.Ct. 792, 801-02, 13 L.Ed.2d 616 (1965). The agency's interpretation should be upheld unless it is "plainly erroneous or inconsistent with the regulation." Id. (quoting Bowles v. Seminole Rock Co., 325 U.S. 410, 413-14, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945)). We find no such error in the Commission's interpretation of its own party-status rules.
 
 
 20
 The Commission determined that Seashore achieved "party" status for purposes of appealing the ALJ's order under 47 C.F.R. Sec. 1.302 by virtue of its earlier petition to deny Jersey Shore's application in the HDO. Appellants maintain that this determination is erroneous, contending that Seashore could only have achieved party status by filing a timely petition to intervene under Commission rules, which it did not do. Seashore also did not properly appeal the ALJ's denial of its intervention petition under 47 C.F.R. Sec. 1.301(c) (1993), which requires appeals from interlocutory agency orders to be filed within five days of entry of the order. By granting Seashore party status for purposes of appeal of the final order, the Commission allegedly reached the merits of Seashore's appeal improperly.
 
 
 21
 Although the Commission's ruling does not comply with the Commission's intervention rules and 47 C.F.R. Sec. 1.301(c), if we affirm the Commission's determination that Seashore has party status, then the intervention rule is not relevant. We do so affirm. An FCC regulation, 47 C.F.R. Sec. 1.302(a), provides that "any party to the proceeding, as a matter of right, may file an appeal from [a presiding officer's final] ruling within 30 days after the ruling is released." 47 C.F.R. Sec. 1.302(a). We will defer to the Commission's interpretation of the phrase "any party to the proceeding" unless it is "plainly erroneous." Udall, 380 U.S. at 17, 85 S.Ct. at 801. Here, the Commission reasoned that, although not granted party status through a petition to intervene, Seashore retained party status as a result of its earlier petition to deny Jersey Shore's application. It was not unreasonable for the Commission to conclude that Seashore's interest in seeing Jersey Shore's application denied could have been affected by the settlement agreement, and therefore, to recognize Seashore status as party to protect that interest. We defer to the agency's reasonable interpretation of 47 C.F.R. Sec. 1.302(a). Seashore's appeal was thus timely filed, and the Commission did not err in reaching the merits of Seashore's appeal.[1]
 
 
 22
 C. The Commission's Disapproval of the Settlement Agreement.
 
 
 23
 1. Standard of Review.
 
 
 24
 We review the Commission's disapproval of the settlement agreement under the highly deferential standard set by section 706 of the Administrative Procedure Act, which provides that a court must uphold a final agency action unless that action is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. Sec. 706(2)(A) (1988). Under this standard, we may reverse the Commission's decision only if it "is not supported by substantial evidence, or the agency has made a clear error in judgment." Kisser v. Cisneros, 14 F.3d 615, 619 (D.C.Cir.1994) (citingCitizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 415-16, 91 S.Ct. 814, 823-24, 28 L.Ed.2d 136 (1971)).
 
 
 25
 2. The Commission Decision.
 
 
 26
 At the heart of their appeal, Press and Jersey Shore challenge the Commission's decision that neither appellant could participate in the settlement agreement after the dismissal of their original applications under the inconsistent application rule. Appellants contend that this decision was arbitrary and capricious in that the Commission departed from established precedent and well-settled policy without providing an appropriate explanation. We reject appellants' argument. The Commission action represents a well-reasoned decision to protect Commission processes and the integrity of the inconsistent application rule, consistent with Commission precedent making clear that the inconsistent application rule is not to be applied in a lax manner.
 
 
 27
 The FCC's inconsistent application rule, 47 C.F.R. Sec. 73.3518, bars an applicant from filing with the Commission two or more applications, all of which cannot be granted because "they are inconsistent or conflicting." The Commission views the filing of inconsistent applications as a serious violation of Commission rules. In 1953, the Commission explained that without the rule, applicants could "flood" the Commission's resources with multiple applications, many of which could not be granted and require otherwise which unnecessary hearings denying "just administration" and fairness to all other applicants seeking the establishment of broadcast services in the same community. See In re Storer Broadcasting Co., 43 F.C.C. 1254, 1256 (1953).
 
 
 28
 Appellants urge that the inconsistent application rule should be relaxed here, relying upon a series of cases in which dismissed applicants were later allowed to participate in a settlement agreement. See In re Judith O. and Larry R. Orkus, 7 FCCR 20 (Rev.Bd.1992); In re Webster-Fuller Communications Assoc., 4 FCCR 4952, 4954 (1989). However, none of the cases cited by appellants involve violations of the inconsistent application rule. In Orkus, the original application violated a U.S./Canada agreement regarding power limitations for domestic stations near the Canadian border. 7 FCCR at 20. The Commission allowed the applicant to participate in the settlement agreement after the power output of the station was cleared by the Canadian government. Similarly, in Webster-Fuller, an ALJ dismissed an applicant's original application for failure to provide reasonable assurance of a transmitter site. 4 FCCR at 4952. The Commission later reinstated the dismissed application and allowed the applicant to participate in the settlement agreement. Id. at 4954. While violation of other rules led to the original dismissals of the applications in those cases, those violations do not implicate Commission procedure. The inconsistent application rule exists primarily to protect Commission resources and processes. It is not unreasonable for the Commission consistently to conclude that violation of that rule, unlike the rules in Orkus and Webster-Fuller, cannot be undone by subsequent amendment. See Big Wyoming Broadcasting Corp., 2 FCCR 3493 (1987).
 
 
 29
 Even when the Commission in a 1992 decision relaxed its previous "hard look" policy, it emphasized that certain defects could not be remedied. In re Amendment of Part 73 of the Commission's Rules to Modify Processing Procedures for Commercial FM Broadcast Applications, 7 FCCR 5074 (1992). In that decision, relaxing FM processing rules to permit curative amendments on a more expansive basis, the Commission noted that its new policy of relaxed filing requirements "does not alter the fact that under our rules certain defects related to the filing of broadcast applications are uncorrectable. For example, an applicant cannot cure through amendment the problems of premature or late filing, inconsistent applications, or failure to pay the required application fee." Id. at 5078 (emphasis added; footnote omitted).
 
 
 30
 Approving the settlement agreement in which Press would be substituted as the applicant on LD Broadcasting's application, the ALJ and Review Board allowed appellants to circumvent the rule. The Commission has a vested interest in prohibiting abuse of its procedural rules. Thus, we uphold the Commission's decision, that Press and Jersey Shore should not be allowed to participate in the settlement agreement because to do so would "permit[ ] the parties to accomplish through a creative settlement agreement what they could not have accomplished directly through the application process," In re Atlantic Radio Communications, Inc., 7 FCCR at 5106, as a reasoned attempt to protect its processes and limited resources. It is neither arbitrary nor capricious. Rather we conclude that the Commission's analysis is reasonable and well supported by Commission precedent.
 
 
 31
 Accordingly, the FCC orders denying approval of the settlement agreement and the Press-Jersey Shore option agreement are
 
 
 32
 Affirmed.
 
 
 
 [1]
 Appellants' procedural argument that the Commission could not have reached the merits without granting party status to Seashore is, in any event, probably incorrect. Under existing Commission rules, the Commission may review a ruling of an ALJ at any time within 50 days of the ALJ's final order. 47 C.F.R. Sec. 1.302(b) (1993). Consequently, even if the Commission refused to grant party status to Seashore, it could still have reviewed the ALJ and Review Board decisions for error on its own motion