UNITED STATES of America,
Appellant,

v.

Dennis HALL, Appellee.

No. 99–3141.

United States Court of Appeals,
District of Columbia Circuit.

Argued April 10, 2000.

Decided June 2, 2000.

As Amended Aug. 7, 2000.

Thomas J. Tourish, Jr., Assistant U.S. Attorney, argued the cause for appellant. With him on the briefs were Wilma A. Lewis, U.S. Attorney, and John R. Fisher and Anne Pings, Assistant U.S. Attorneys.

Sara E. Kopecki argued the cause and filed the brief for appellee.

Before: EDWARDS, Chief Judge, HENDERSON and ROGERS, Circuit Judges.

Opinion for the Court filed by Chief Judge EDWARDS.

HARRY T. EDWARDS, Chief Judge:

Appellant, the United States, raises only one question on this appeal: Did the District Court have jurisdiction to grant a motion for a new trial *nunc pro tunc* (which literally means "now for then") in order to circumvent the time limitations of Federal Rule of Criminal Procedure 33? Rule 33 provides that a motion for a new trial must be filed "within 7 days after the verdict or finding of guilty or within such further time as the court may fix *during the 7-day period*" (emphasis added). There is no dispute that the District Court did not actually grant Mr. Dennis Hall's motion for an extension of time within 7 days after a jury found appellee Hall guilty of possessing a firearm and ammunition after a felony conviction in violation of 18 U.S.C. § 922(g) (1994) and of possessing marijuana in violation of 21 U.S.C. § 844(a) (1994) on May 6, 1999. Mr. Hall filed his motion for an extension of time on May 14, 1999, within 7 days after the verdict; but the trial court did not respond to that motion until after the 7 days had passed. Mr. Hall subsequently filed a motion for a new trial on June 10, 1999; this filing was within the time limit set by the District Court when it eventually granted Mr. Hall's motion for an extension of time. The sole controversy in this case is whether the District Court had the authority to avoid Rule 33's time limit—that is, whether the court was authorized to wait until June 3, 1999, almost one month after the jury verdict, before granting Mr. Hall's motion for an extension and then backdate its decision *nunc pro tunc* to May 14, 1999 to satisfy Rule 33's time requirements.

We agree with the Government that the District Court erred. The District Court's *nunc pro tunc* order was a nullity. We also reject any suggestion that Mr. Hall was at the mercy of the District Court, for there was no reason that Mr. Hall could not have filed a motion for a new trial within Rule 33's 7-day time period. Counsel could not provide such a reason at oral argument, and we can discern none. Finally, we reject as specious Mr. Hall's claim that the District Court's pre-verdict ruling, deferring consideration of the defendant's objection to the prosecutor's closing argument, necessarily transformed the defendant's pre-verdict motion to one for a new trial or mistrial. We therefore reverse the District Court's judgment.

## I. FACTS

Mr. Hall's jury trial commenced on May 3, 1999. On May 6, 1999, the jury found Mr. Hall guilty on one count of possession of a firearm and ammunition by a convicted felon and one count of possession of marijuana. Six business days after the jury's verdict, on May 14, 1999, Mr. Hall filed a timely motion for an extension of time alleging that the prosecution had continually and impermissibly emphasized Mr. Hall's status as a convicted felon during its rebuttal argument.

Despite Rule 33's clear prescription that a court may only grant an extension "within such further time as the court may fix during the 7-day period" after the verdict or finding of guilty, the District Court chose to hold Mr. Hall's motion in abeyance to allow the Government to respond. On June 3, 1999, after it became clear that the Government did not intend to respond, the District Court granted Mr. Hall's motion *nunc pro tunc* to May 14, 1999 and authorized Mr. Hall to file a motion for a new trial on or before June 10, 1999. Mr. Hall met the new deadline.

On July 9, 1999, the Government filed an opposition, arguing that the District Court lacked jurisdiction under Rule 33 to consider the motion for a new trial. In particular, the Government challenged the District Court's attempt to circumvent Rule 33's time requirement by resorting to *nunc pro tunc* relief. On October 1, 1999, the District Court granted Mr. Hall's motion for a new trial, finding that "[t]o penalize the defendant for the Court's delay in granting the motion, which delay resulted from an effort of the Court, *sua sponte,*

to protect the government's right to respond, would be manifestly unjust, if not an unconstitutional violation of the due process clause." *United States v. Hall*, No. 98–435–LFO, Mem. Op. at 4 (D.D.C. Nov. 4, 1999) ("Mem. Op."). This appeal followed.

## II. ANALYSIS

### A. Standard of Review

■ Motions for new trials that implicate jurisdictional issues are reviewed *de novo*. *See United States v. Torres*, 115 F.3d 1033, 1035 (D.C.Cir.1997) ("Although we typically review denials of new trial motions for abuse of discretion, because the district court dismissed Torres's motion on jurisdictional grounds, our review is *de novo*." (internal citations omitted)).

### B. Jurisdiction

■ The District Court's actions are clearly proscribed by the Supreme Court's decision in *Carlisle v. United States*, 517 U.S. 416, 116 S.Ct. 1460, 134 L.Ed.2d 613 (1996), a case that the District Court's opinion fails to mention. In *Carlisle*, the Court considered whether a district court had authority to grant a post-verdict motion for judgment of acquittal filed just one day outside of the time limit prescribed by Federal Rule of Criminal Procedure 29(c). Rule 29(c) provides, in relevant part, that "[i]f the jury returns a verdict of guilty ..., a motion for judgment of acquittal may be made or renewed within 7 days after the jury is discharged or within such further time as the court may fix during the 7–day period." FED. R.CRIM. P. 29(c). It is true that the petitioner in *Carlisle*, unlike Mr. Hall, filed an *untimely* motion. This factual distinction is not cause for much concern, however, because like Mr. Hall, the petitioner in *Carlisle* argued that district courts should have the discretion to step outside of the Rules' strict time limits, and it is this latter assertion upon which the *Carlisle* Court ultimately focused. In particular, the Court read Rule 29(c) in conjunction with Rule 45(b), which

provides that, "the court may not extend the time for taking any action under Rules 29, 33, 34 and 35, except to the extent and under the conditions stated in them." FED. R.CRIM. P. 45(b). This language convinced the Court that, because "[t]hese rules are plain and unambiguous ... [, t]here is simply no room in the text of Rules 29 and 45(b) for the granting of an untimely postverdict motion of acquittal...." *Carlisle*, 517 U.S. at 421, 116 S.Ct. 1460. The Court therefore concluded that the text of the relevant Rules did not authorize district courts to circumvent Rule 29's time limits.

The Court also considered and rejected petitioner's argument that, in the absence of textual support from the Rules themselves, courts retain limited "inherent supervisory authority" to depart from the Rules' strict time limits. In advancing this argument, the petitioner in *Carlisle* relied on *United States v. Hasting*, 461 U.S. 499, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983), where the Court held that courts "may, within limits, formulate procedural rules not specifically required by the Constitution or the Congress." *Id.* at 505, 103 S.Ct. 1974. The *Carlisle* Court read the decision in *Hasting* very narrowly, however, holding that "[w]hatever the scope of this 'inherent power,' ... it does not include the power to develop rules that circumvent or conflict with the Federal Rules of Criminal Procedure." *Carlisle*, 517 U.S. at 426, 116 S.Ct. 1460. In other words, as a general principle, when the text of a rule is clear, it must be enforced as written. The Court allowed that a failure to meet a prescribed time limit might be excused in "the 'unique circumstances' that the cause of the failure to meet the Rule's deadline was an erroneous ruling or assurance by the District Court itself." *Id.* at 428, 116 S.Ct. 1460. At bottom, however, *Carlisle* says that "[t]he case law of [the] Court ... does not establish any 'inherent power' to act in contravention of applicable Rules." *Id.*

■ In the present case, Rule 33 is unambiguous. The Rule means what it says: A court can only extend the time in which to grant a motion for a new trial if a court fixes such a time within 7 days of the verdict or finding of guilty. Rule 45(b) resolves any possible ambiguity by noting that a district court's authority to extend time is limited "to the extent and under the conditions stated" in Rule 33. FED. R.CRIM. P. 45(b).

■ We recognize that a trial court may exercise "long ... unquestioned" "inherent power" in the enforcement of Rules, but such a power may only be exercised when it does not run afoul of an express and unambiguous Rule to the contrary. *Carlisle,* 517 U.S. at 426, 116 S.Ct. 1460. The "long ... unquestioned" power caveat therefore has no application in this case, because Rule 33 is absolutely clear in its terms.

The District Court in this case sought to justify its disputed action by suggesting that it would be fundamentally unfair to reject Mr. Hall's untimely motion:

> To penalize the defendant for the Court's delay in granting the motion, which delay resulted from an effort of the Court, *sua sponte,* to protect the government's right to respond, would be manifestly unjust, if not an unconstitutional violation of the due process clause.

Mem. Op. at 4. We disagree. Indeed, the defendant does not even contend that the District Court somehow erred in failing to respond to the motion for extension of time within the 7-day period. This is not surprising, because nothing in Rule 33 compels a district court to respond to a motion for an extension of time within the 7-day time limit; the Rule merely provides that after the 7-day window has closed, a district court is without jurisdiction to grant an extension of time. Thus, although the trial court's decision to delay its decision did not violate any law, its decision to grant an extension of time after the 7-day window had closed necessarily

abrogated Rule 33 and was thus impermissible.

Furthermore, there was no reason why Mr. Hall could not have filed a motion for a new trial within Rule 33's 7-day time limit. At oral argument, counsel offered no explanation for this oversight, and we can discern none.

■ Finally, Mr. Hall argues that the District Court effectively converted a defense objection into a motion for a new trial when the trial judge addressed the parties before the case was submitted to the jury. Following closing argument by Mr. Hall's attorney, the prosecutor, in rebuttal, warned the jury not to allow Mr. Hall's attorney to get away with playing a "race card." Mem. Op. at 7. Mr. Hall's attorney objected and requested the trial judge to instruct the jury to disregard the prosecutor's rebuttal. The judge, however, said that he was "not going to get into this. The jury will sort this out and I'll consider it after we have a verdict." *Id.* at 8. Mr. Hall argues that this statement by the judge necessarily converted the defendant's motion to one for a new trial or mistrial. This is a specious claim. The District Court never suggested this ground as a basis for the relief afforded Mr. Hall; rather, the court granted Mr. Hall's motion for an extension of time *nunc pro tunc.* Furthermore, Mr. Hall's own actions demonstrate the baselessness of his reading of the District Court's statements; if Mr. Hall were so certain that his pre-verdict motion had been converted to a motion for a new trial or mistrial, there would have been no need for him to file a motion for an extension of time in which to file a motion for a new trial. The simple truth is that the District Court acted on an untimely motion for a new trial, something that it had no authority to do under Rule 33.

## III. CONCLUSION

For the foregoing reasons, the District Court was without jurisdiction to grant Mr. Hall's motion for an extension of time

*nunc pro tunc.* We therefore reverse the judgment of the District Court.