Timothy MALCOLM, Plaintiff,

v.

Janet RENO, Attorney General,
United States Department
of Justice, Defendant.

Civil Action No. 00–0178–LFO.

United States District Court,
District of Columbia.

Oct. 19, 2000.

Monk Lyons, Clifford, Lyons & Garde, Washington, DC, for Plaintiff.

Fred E. Haynes, Mark Nagle, Wilma Lewis, Assistant United States Attorney, Washington, DC, for Defendant.

*MEMORANDUM*

OBERDORFER, District Judge.

Plaintiff moves for a declaratory judgment that a May 3, 1999 Department of Justice ("Department") decision under the Rehabilitation Act, which he did not appeal, is final and binding on the Department. Plaintiff also moves for temporary and permanent injunctive relief to enforce the remedy ordered in that decision. These motions arise out of plaintiff's *de novo* appeal of a November 17, 1999 Department decision as to compensatory damages. An accompanying order grants plaintiff's motion for a preliminary injunction and contemplates further proceedings to resolve plaintiff's compensatory damages claim.

I.

The undisputed facts, as set forth in Department's decisions of May 3, 1999 and November 17, 1999 (attached hereto as Appendices A and B, respectively), and as related by the parties, are as follows. Plaintiff Timothy Malcolm is a 36–year–old resident of Minnesota. In 1995, after ten years in the Marine Corps, Malcolm resigned his commission as a Captain in order to become a Special Agent with the Federal Bureau of Investigation ("Bureau"). On December 7, 1995, the Bureau offered Malcolm a conditional appointment as a Special Agent, subject to a medical examination and other prerequisites. May 3, 1999 decision, Appendix A at 2. In January 1996, a Bureau physician examined Malcolm and found him "qualified for strenuous physical exertion without any defects restricting or prohibiting his participation in defensive tactics and dangerous assignments." *Id.* During the examination, however, the doctor noticed that Malcolm had an elevated white blood cell count and ordered a follow-up evaluation. *Id.* After examination by a specialist, Malcolm was diagnosed with chronic lymphocytic leukemia. *Id.* at 3. Since the diagnosis, Malcolm has been asymptomatic and has needed no medical treatment for his condition.

As a result of the leukemia diagnosis, the Bureau rescinded Malcolm's conditional offer of employment on April 2, 1996. *Id.* at 3–4. One month later, Malcolm contacted an Equal Employment Opportunity (EEO) counselor. Unable to resolve the matter informally, on June 6, 1996, the counselor issued Malcolm a Notice of Right to File a Complaint. *Id.* at 1. On June 17, 1996, Malcolm filed a complaint with the Bureau's EEO office, and in February 1997, the Bureau's EEO office informed Malcolm of his option to request either a hearing before an Equal Employment Opportunity Commission (EEOC) Administrative Judge, or a final Department decision without a hearing. *Id.* On March 5, 1997, Malcolm requested a hearing before the EEOC Administrative Judge. After denying the Bureau's Motion for Summary Judgment, the EEOC Administrative Judge, on February 24, 1999, issued a Recommended Decision without holding a hearing, finding that the Bureau had violated Section 501 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 791. *Id.* at 1–2. The EEOC Administrative Judge then forwarded the case to the Department's Complaint Adjudication Office ("Office") for a final agency decision. *Id.* at 2.

On May 3, 1999, the Office issued an agency decision, captioned, "Department of Justice Final Decision in the matter of *Timothy G. Malcolm v. Federal Bureau of Investigation.*" *Id.* at 1. In the decision, the Office adopted the findings of the EEOC Administrative Judge that the Bureau's withdrawal of its offer of employment to Malcolm violated the Rehabilitation Act. *Id.* at 16. Specifically, the decision stated that at the time of his rejection, Malcolm was qualified and capable of performing all the essential functions of a Special Agent. *Id.* at 13. Nonetheless, the opinion determined that the Bureau rejected him based on speculation that he might become unable to work as an Bureau agent sometime in the future due to his leukemia. *Id.* at 11. The decision further explained that although Malcolm "was not an individual with a disability because there was no evidence that his cancer substantially limited a major life activity," the Bureau regarded him as disabled and, based on this perception, refused to hire him. *Id.* at 6–7. The decision rejected the Bureau's argument that Malcolm was not denied a class of jobs due to the Bureau's perception of disability, concluding, as did the EEOC Administrative Judge, that "since the Bureau had excluded complainant from a Special Agent position because his 'need for . . . aggressive treatment in the future will very likely compromise his ability to carry out' law enforcement duties, this rationale tended to exclude complainant from all law enforcement positions requiring similar skills." *Id.* at 7. The decision also stated that "the concerns raised by Bureau officials about complainant's condition would effectively preclude him from working any law enforcement position, not just the position of Bureau Special Agent." *Id.* at 11.

To remedy the discrimination, the May 3, 1999 decision ordered the Bureau to (1) provide Malcolm with a written offer of the position of Special Agent, subject to an updated background investigation, medical examination and all other prerequisites for the position, (2) pay Malcolm back pay and benefits retroactive to the date he would have been hired but for its discriminatory conduct, (3) consider his claim for attorney's fees, and (4) consider whether he was entitled to compensatory damages (even though he had not sought them). *Id.* at 18–20. As to compensatory damages, the decision specifically observed that "[c]omplainant might also be entitled to pecuniary and non-pecuniary compensatory damages . . . stemming from the rescission of the conditional offer. . . . Complainant should present evidence of compensable monetary damages to the FBI's EEO office." *Id.* The decision further ordered that

> [t]he Bureau should review and evaluate complainant's claim for compensatory damages within a reasonable time period, and if it agrees with complainant's claim for monetary relief, compensate complainant the agreed-upon sum. In the event there is a disagreement over the amount, and the parties cannot settle on a mutually agreeable sum, the parties should notify this office in writing whereupon we will issue a final decision based on the records and documents submitted by the parties as to what is an appropriate award.

*Id.* at 20. In its cover letter to the May 3, 1999 decision, the Office notified Malcolm of his "*Rights of Appeal.*" Cover Letter to May 3, 1999 decision, Appendix A. Malcolm did not appeal any part of the May 3, 1999 decision. As ordered, the Bureau began Malcolm's updated background investigation and medical examination.

On November 17, 1999, after proceedings concerning Malcolm's claim for compensatory damages, the Office issued another agency decision, in which it found that the timing and basis of the Bureau's rescission of Malcolm's conditional employment offer caused Malcolm to suffer emotional and psychological distress and awarded him $15,000 in compensatory damages. The first page of the November

17, 1999 decision identified it as a "Department of Justice Final Decision." November 17, 1999, Appendix B at 1. The cover letter signed by a Department's Complaint Adjudication Officer identified the decision as final.

> Under the Department of Justice's equal employment opportunity regulations, the Complaint Adjudication Officer renders the final Department of Justice decision on your complaint, including matters of relief. Enclosed is the final Department of Justice decision *in the matter of compensatory damages.*

Cover Letter to November 17, 1999 decision, Appendix B (emphasis added). The cover letter also set forth the procedures governing Malcolm's *"Rights of Appeal."* *Id.* The November 17, 1999 decision referred to the May 3, 1999 decision as an "FAD", or final agency decision. November 17, 1999 decision at 1.

On February 2, 2000, Malcolm filed a complaint in this Court against defendant seeking a trial *de novo* on the compensatory damages issues addressed by the November 17, 1999 decision. Complaint at 2. On April 18, 2000, the defendant answered and asserted that Malcolm's appeal of the November 17, 1999 decision would subject his entire case, including the May 3, 1999 decision, to *de novo* review. Answer at 1–2. Malcolm then filed an amended complaint on May 31, 2000, seeking, in addition to relief relating to his *de novo* challenge to the November 17, 1999 decision, an order declaring the May 3, 1999 decision final and binding on the Department.

In July 2000, the Bureau informed Malcolm that he had successfully completed the prerequisite medical examination and background investigation ordered under the May 3, 1999 decision. Malcolm was approved by the Bureau to attend the Special Agent training class beginning in

October 2000 at Quantico, Virginia. However, the Bureau has refused to place Malcolm in a Special Agent position until the final resolution of this lawsuit.

The Bureau's next scheduled Special Agent training class begins October 23, 2000 at Quantico, Virginia. A second training session is tentatively scheduled to begin in March 2001, but may not commence until some time after that date. Malcolm, who was 32 years old when his conditional offer of employment was withdrawn, will be 37 years old on May 17, 2001. "To qualify for training as a Bureau Special Agent, you must be ... at least 23 and not have reached your 37th birthday on appointment." http://www.fbi.gov/employment/agent2.htm; *see* FBI Application Checklist for the Special Agent Position, Publ. No. FD–869 (Aug. 26, 1997) ("I understand that if I reach age 37 prior to the time of appointment to the FBI Academy I will be disqualified from the applicant process.").[1]

On September 22, 2000, Malcolm moved for a temporary restraining order, declaratory judgment and preliminary and permanent injunction to (1) declare that the May 3, 1999 decision is final and binding, (2) direct the defendant to comply fully with the terms of the May 3, 1999 decision without delay, and (3) direct the defendant to take all necessary steps to place Malcolm in the October 23, 2000 Special Agent class.

## II.

■ On its face, it is clear that the May 3, 1999 decision was a final agency decision. The first page of the decision identified it as a "Department of Justice Final Decision in the matter of *Timothy G. Malcolm v. Federal Bureau of Investigation.*" May 3, 1999 decision at 1. The cover letter

---

1. Counsel for the defendant has represented that if there is no Special Agent class before plaintiff becomes 37, and he thereafter prevails in this litigation, the Court could appoint him *nunc pro tunc* as of a "period of time when he was less than 37." Defendant's Memorandum in Opposition to Plaintiff's Motions for a TRO and for a Preliminary Injunction ("Def.Opp.") at 23. *See,* however, *United States v. Hall,* 214 F.3d 175 (2000).

from the Department's Complaint Adjudication Officer stated:

> Under the Department of Justice's equal employment opportunity regulations, the Complaint Adjudication Office renders the *final Department of Justice decision* on your complaint. Enclosed is the *final Department of Justice decision.*

Cover Letter to May 3, 1999 decision at 1 (emphasis added). As required by 29 C.F.R. § 1514.110(a) (2000), which governs final agency actions following an EEOC Administrative Judge's decision, the Office notified Malcolm of his *"Rights of Appeal." Id.* at 1.

Defendant contends that the May 3, 1999 decision was "erroneously characterized as a final decision," and argues that because the full extent of the relief due Malcolm had not been decided, there was no truly final judgment until the November 17, 1999 decision on compensatory damages. Def. Opp. at 17. In support of its argument, the defendant quotes 29 C.F.R. § 1614.110(b) (2000), a regulation governing final decisions on discrimination claims, which states, "The final decision shall consist of findings by the agency on the merits of each issue in the complaint and, when discrimination is found, appropriate remedies and relief ..." The defendant's argument is not persuasive. First, subpart (b) is not applicable here.[2] Second, the May 3, 1999 decision meets the requirements of the portion of the regulation cited by the defendant; it disposed of each of the substantive issues raised by Malcolm's administrative complaint, consisted of findings by the defendant on the merits of Malcolm's discrimination claim, and ordered remedies and relief in the form of a Special Agent position and back pay. Malcolm conspicuously did not claim compensatory damages. The first suggestion of the availability of such damages came in the Department's final decision of May 3, 1999.

Additional evidence of the finality of the May 3, 1999 decision, and that the defendant viewed it as final, is the action taken by the Bureau after its issuance. Upon issuance, the Bureau began implementing the relief ordered by conducting the prerequisite background investigation and physical tests. If the agency did not consider the May 3, 1999 decision to be final, it is unlikely it would have taken such action.

The defendant and the Bureau are bound by the final May 3, 1999 decision; the defendant may not appeal it; and a court may enforce the decision without *de novo* review. *Rochon v. Attorney General,* 710 F.Supp. 377, 379 (D.D.C.1989). In *Rochon,* a Bureau agent sought enforcement of a final EEOC decision, and the Department attempted to seek *de novo* review of the decision. The Court, in denying the Department's attempt, stated

> There is no question that the DOJ, the Attorney General, and the Director of the FBI are bound by the DOJ's decision, and that plaintiff need not relitigate his claims filed at the administrative level in order to obtain judicial enforcement of the corrective relief ordered by that decision.

*Id.* at 379. In *Moore v. Devine,* 780 F.2d 1559 (11th Cir.1986), the court concluded that the relitigation of findings contained in a final agency decision

> would require an employee who has successfully invoked an administrative scheme designed to bind agencies to remedy discrimination to prove his or her entire case again in federal court when the agency refuses to take the ordered corrective action. The result would undercut the utility of administrative dispute resolution....

*Id.* at 1563. Malcolm may rely on the Department's original characterization of the decision as final. To rule otherwise would subject employees and agencies ordered to take action in connection with

---

2. Subpart (a) of 29 C.F.R. § 1614.110 (2000) applies to "[f]inal action by an agency following a decision by an administrative judge," which is the situation presented in this case.

final agency decisions to unnecessary uncertainty.

Defendant concedes that Malcolm does not risk *de novo* review when he seeks only judicial enforcement of the relief prescribed in a final agency decision. *See Girard v. Rubin*, 62 F.3d 1244, 1247 (9th Cir.1995); *Moore v. Devine*, 780 F.2d 1559, 1563 (11th Cir.1986). However, the defendant contends that Malcolm's appeal of the November 17, 1999 decision subjects to *de novo* review the separate and unappealed May 3, 1999 decision. In this unique situation, the defendant is incorrect. Seeking *de novo* review of one final agency decision does not place a separate, unappealed final agency decision at risk of *de novo* review.

Defendant further argues that allowing plaintiffs to appeal the remedy ordered in the November 17, 1999 decision while leaving intact the finding of liability gives employees a no-risk option to seek additional relief in the district court. In this case, however, the Department is bound by the scenario its Complaint Adjudication Office created by choosing to issue two separate decisions. In addition, plaintiff is hardly without risk in seeking *de novo* review of the November 17, 1999 decision. The compensatory damages award in the District Court may be far lower than the award he received in the administrative proceedings.

Given the finality of the May 3, 1999 decision, it is not necessary to consider defendant's contention that the result reached in the May 3, 1999 decision would have been different if it had followed the Supreme Court's decision in *Sutton v. United Airlines, Inc.*, 527 U.S. 471, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999). In *Sutton*, a group of applicants with severe myopia alleged that United's vision re-

quirements precluded them from the position of global airlines pilot, and, thus, United regarded them as disabled in violation of the Americans with Disabilities Act. *Id.*, 119 S.Ct. at 2144. The ADA provides that having a disability includes "being regarded as having," 42 U.S.C. § 12102(2)(C), "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." *Id.* § 12102(2)(A).[3] Individuals may fall within this statutory definition if the covered entity (employer) mistakenly believes that an actual, non-limiting impairment substantially limits one or more major life activities. *Sutton*, 119 S.Ct. at 2149–50. In concluding that the petitioners in *Sutton* had not stated a claim that they were regarded as substantially limited in the major life activity of working, the Court stated that "[t]o be substantially limited in the major life activity of working ... one must be precluded from more than one type of job, or a particular job of choice. If jobs utilizing an individual's skills (but perhaps not his or her unique talents) are available, one is not precluded from a substantial class of jobs." *Id.* at 2151. The Court also stated that "it is not enough to say that if the physical criteria of a single employer were imputed to all similar employers one would be regarded as substantially limited in the major life activity of working only as a result of that imputation." *Id.* at 2152.

In his review of Malcolm's Rehabilitation Act case, the EEOC Administrative Judge used a standard similar to that used in *Sutton* in finding that the Bureau officials regarded Malcolm as precluded from the entire class of law enforcement positions. Specifically, the EEOC Administrative Judge stated that the Bureau excluded

**3.** The regulations governing the Rehabilitation Act set out a standard similar to the ADA for perceived disability cases. An individual with a handicap for purposes of the Rehabilitation Act includes someone who "is regarded as having such impairment." 29 C.F.R. § 1614.203(a)(1)(iii). The regulations explain that: *"Is regarded as having such an impair-*

*ment* means has a physical or mental impairment that does not substantially limit major life activities but is treated by an employer as constituting such a limitation ... or has none of the impairments ... but is treated by an employer as having such an impairment." *Id.* § 1614.203(a)(5).

complainant from a Special Agent position "because his 'need for ... aggressive treatment in the future will very likely compromise his ability to carry out' law enforcement duties" and observed that "this rationale tended to exclude complainant from all law enforcement positions requiring similar skills." May 3, 1999 decision at 7. The EEOC Administrative Judge also stated that "the concerns raised by FBI officials about complainant's condition would effectively preclude him from working any law enforcement position, not just the position of FBI Special Agent." *Id.* at 11. Thus, it does not appear that the *Sutton* precedent precludes the relief that plaintiff seeks.

### III.

Having determined that the May 3, 1999 decision was a "final" agency action, the question remains whether Malcolm's motion for an injunction enforcing the terms of that decision is properly before this Court. Defendant contends that the Court has no jurisdiction because Malcolm has not exhausted his administrative remedies. Defendant invokes an Equal Employment Opportunity Commission regulation concerned with compliance with settlement agreements and final action. It provides:

(a) ... Final action that has not been the subject of an appeal or civil action shall be binding on the agency. If the complainant believes that the agency has failed to comply with the terms of a ... decision, the complainant *shall* notify the EEO Director, in writing, of the alleged noncompliance within 30 days of when the complainant knew or should have known of the alleged noncompliance....

(b) The agency shall resolve the matter and respond to the complainant in writing. If the agency has not responded to the complainant, in writing, or if the complainant is not satisfied with the agency's attempt to resolve the matter, the complainant *may* appeal to the Commission for a determination as to whether the agency has complied with the

term of the ... decision. The complainant may file such an appeal 35 days after he or she has served the agency with the allegations of noncompliance, but must file an appeal within 30 days of his or her receipt of an agency's determination. The complainant must serve a copy of the appeal on the agency and the agency may submit a response to the Commission within 30 days of receiving notice of the appeal.

29 C.F.R. § 1614.504 (emphasis added).

The only "mandatory" aspect of this regulation is that a complainant who believes that an agency is not complying with a final agency decision must give notice to the EEO Director of the agency within 30 days of discovering the agency's noncompliance. 29 C.F.R. § 1614.504(a). Once that notice has been given, the complainant, if not satisfied with the agency's response, has the choice of either filing an appeal with the EEOC or seeking judicial review. *Saksenasingh v. Secretary of Educ.*, 126 F.3d 347, 350 (D.C.Cir.1997); 29 C.F.R. § 1614.504(b). Defendant argues that *Saksenasingh* should be distinguished from Malcolm's case because Malcolm seeks to enforce a final agency decision, while the employee in Saksenasingh sought to enforce a settlement agreement. The regulation, however, does not distinguish between compliance with settlement agreements and final action; in either case "the complainant may appeal to the Commission." 29 C.F.R. § 1614.504(b). As the Court stated in *Saksenasingh*, the regulation "simply authorizes appeal to the EEOC as one possible avenue for appeal.... appeal to the EEOC is not required." 126 F.3d at 350.

Malcolm concedes that he has not notified the Bureau's EEO Director, in writing, of the Department's noncompliance with the May 3, 1999 decision. Defendant argues that this constitutes a failure to exhaust administrative remedies and precludes judicial enforcement of the May 3, 1999 decision. Malcolm responds that he should be excused from the exhaustion

rule because compliance with the administrative process contemplated by the applicable regulation (notice to the Department EEO Director) would be an exercise in futility.

■ Although a party is usually required to exhaust administrative remedies before seeking judicial relief, the doctrine of administrative exhaustion is not absolute. As our Court of Appeals has stated: "When the reasons for supporting the doctrine are found inapplicable, the doctrine should not be blindly applied." *Athlone Indus. v. Consumer Prod. Safety Comm'n*, 707 F.2d 1485, 1488 (D.C.Cir.1983); *see also Cutler v. Hayes*, 818 F.2d 879, 890–91 (D.C.Cir.1987) (exhaustion doctrine "should be applied flexibly, with an eye toward its underlying purpose").

As the court in *Athlone* explained:

The exhaustion doctrine was designed primarily to prevent premature interruption of the administrative process. In that regard it serves three main purposes. First, it preserves the autonomy of the administrative agency by allowing the agency to apply its expertise and exercise its discretion in appropriate circumstances, by giving the agency a chance to discover and correct its own errors, and by discouraging frequent and deliberate flouting of administrative processes [which] could weaken the effectiveness of an agency. Second, application of the exhaustion doctrine aids judicial review which may [otherwise] be hindered by the failure of the litigant to allow the agency to make a factual record, or to exercise its discretion or apply its expertise. Third, requiring exhaustion in appropriate cases promoted judicial and administrative efficiency by prohibiting repeated interruptions of the agency proceeding and by increasing the possibility that no judicial decision will be necessary, since the complaining party's rights may ultimately be vindicated on the agency level.

*Athlone*, 707 F.2d at 1488 (internal quotations and footnotes omitted). Where none of the purposes underlying the doctrine would be served by requiring exhaustion, the requirement may be waived. *Id.* at 1489 ("The desirability of avoiding ... unfairness, the purely legal nature of the issue presented, and the likely futility of further resort to the Commission, all operate to convince us that it would be unwise to adhere to the general rule of exhaustion in this case."). Moreover, futility is a well-established ground for waiving exhaustion rules. *See, e.g., Equal Employment Opportunity Comm'n v. Lutheran Social Servs.*, 186 F.3d 959, 967 (D.C.Cir.1999) (excusing exhaustion where EEOC's "brief [in court case] makes it quite clear that it considers Lutheran's privilege claims meritless"); *see also Air Canada v. Department of Transp.*, 148 F.3d 1142, 1150 n. 6 (D.C.Cir.1998); *Leorna v. United States Dep't of State*, 105 F.3d 548, 552 (9th Cir. 1997) (recognizing under the Rehabilitation Act case that exhaustion of administrative remedies is not required where exhaustion would have been "futile"); *Sabatini v. Corning–Painted Post Area Sch. Dist.*, 78 F.Supp.2d 138, 140–41 (W.D.N.Y.1999) (finding that requiring exhaustion in a case brought under the IDEA and Rehabilitation would have been futile).

■ To reiterate the chronology upon which this case comes before the Court, *see supra* at 1–5: on December 7, 1995, the Bureau offered Malcolm a conditional appointment as a Special Agent. Upon discovery that plaintiff had leukemia, the Bureau determined not to hire him. After the Bureau's rescission of his offer on April 2, 1996, Malcolm followed the administrative procedures required by the Rehabilitation Act and the regulations thereunder. He first contacted an EEO counselor. Unable to resolve the matter at the counselor level, Malcolm was issued a Notice of Right to File a Complaint. He filed his complaint with the Bureau's EEO office, and over seven months later was informed by that office that he could request a hearing with an EEOC Administrative Judge. Malcolm requested such

a hearing and the EEOC Administrative Judge, on February 24, 1999, issued a Recommended Decision in Malcolm's favor. Then, on May 3, 1999, the Office, after reviewing the recommended decision, the evidence, and the law, determined that the Bureau had a legal obligation to offer Malcolm the position of Special Agent. In that ruling the Office also advised him that he might be entitled to compensatory damages. In November, without disturbing the May 3, 1999 ruling, the Office ruled that he was entitled to damages in the amount of $15,000. Thereafter, as he was entitled, Malcolm brought this case challenging the amount of compensatory damages authorized. In bringing this action, he conspicuously left undisturbed the May 3, 1999 ruling that he was entitled to appointment as a Special Agent. In her answer to that complaint, the defendant (as distinguished from the Bureau), for the first time, repudiated the May 3, 1999 decision, claiming that Malcolm's appeal of the November 17, 1999 decision placed the May 3, 1999 decision under *de novo* review as well. Answer at 1–2.

The chronology of events clearly establishes the futility of further administrative proceedings. The only administrative process contemplated by the regulations is that a complainant notify the EEO Director that the agency is, in the complainant's view, not complying with its own final agency action. In a normal case, this notification would give the agency an opportunity to comply with its own final agency action before bringing the matter to court. In the present case, however, notification of the EEO Director would be meaningless. The Department is already aware that Malcolm believes that it is not complying with its own final action. In fact, it was the answer filed by the Department in the present litigation, challenging the finality of its May 3, 1999 decision, that first informed Malcolm that the Department had no intention of complying with the terms of that decision unless a court enforced it. Thus, the defendant's position

in the present litigation clearly establishes that, absent a court order, it has no intention of complying with the May 3, 1999 decision of the Office.

Moreover, the Attorney General is the ultimate authority in the Department of Justice and she has, in effect, determined not to comply with the May 3, 1999 decision. In the pending lawsuit, the answer drew the line in the dust. The EEO Director is her subordinate many times removed. When the Attorney General spoke as she did in her answer, she, in effect, precluded any further consideration of compliance with the May 3, 1999 decision by either the Bureau or the Bureau's EEO Office. In these peculiar circumstances, a notice to the Bureau's EEO Director would have been manifestly redundant and futile. Thus, it remains for a court to enforce the May decision. Finally, none of the purposes underlying the exhaustion doctrine—respecting administrative autonomy, aiding judicial review, or promoting administrative and judicial efficiency—would be furthered by requiring Malcolm now to notify the EEO Director of the agency's noncompliance. To the contrary, to require Malcolm at this point to file his notice with the EEO Director, wait 35 days, and then return to court, would not only waste time, but after four long years could render Malcolm too old to meet the Bureau's Special Agent qualification requirement that a candidate must enter before turning 37. Any further delay would jeopardize his ability to obtain the relief he is clearly entitled to and cause him irreparable injury. The exhaustion doctrine is not intended to lead to such an inefficient and inequitable outcome. Accordingly, the doctrine of administrative exhaustion does not bar enforcement of the May 3, 1999 decision.

## IV.

Plaintiff seeks injunctive relief to direct the Justice Department to take all necessary steps to place him in the Octo-

ber 23, 2000 class of FBI Special Agents. To demonstrate entitlement to a preliminary injunction, Malcolm must show 1) a substantial likelihood of success on the merits, 2) that he would suffer irreparable injury if the injunction is not granted, 3) that an injunction would not substantially injure other interested parties, and 4) that the public interest would be furthered by the injunction. *CityFed Financial Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 746 (D.C.Cir.1995).

■ Here, given the declaratory judgment as to finality, Malcolm is likely to prevail on the merits of his prayer for injunctive relief. On the issue of irreparable injury, the defendant contends that under *Sampson v. Murray*, 415 U.S. 61, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974), the District Court may not issue injunctive relief in government personnel matters unless plaintiff makes a "heightened showing of irreparable harm." Def. Opp'n at 22. In that case, Murray, a probationary Public Buildings Service employee, sought a temporary restraining order to enjoin her discharge pending review of her claim by the Civil Service Commission. *Id.* at 63, 94 S.Ct. 937. The Court denied her motion concluding that loss of income and damage to Murray's reputation would not constitute the irreparable injury necessary to issue a preliminary injunction. *Id.* at 92, 94 S.Ct. 937. The Court emphasized that the injunction would have an "obviously disruptive effect" on the on-going administrative review process and that adequate compensatory or other corrective relief would be available to the respondent at a later date. *Id.* at 83–84, 90–92, 94 S.Ct. 937. However, the Court expressly stated that it did not foreclose the granting of a preliminary injunction in Government personnel cases. *Id.* at 84, 94 S.Ct. 937.

Malcolm's situation is quite different from that of the employee in *Sampson.* Malcolm has already sought and received relief through the administrative process. While he has appealed the Office's November 17, 1999 decision, injunctive relief on the May 3, 1999 decision would not disrupt any ongoing administrative review, it would merely enforce the judgment issued by the Office in the May 3, 1999 decision. It is not necessary, however, to decide whether heightened irreparable harm under *Sampson* or traditional irreparable harm is required in cases involving employees such as Malcolm. Malcolm readily meets this factor under either test. It is undisputed that the next Bureau Special Agent training class begins October 23, 2000 at Quantico, Virginia. It is also undisputed that Malcolm has met the requirements set forth in the May 3, 1999 decision. He has passed the requisite background investigation and physical requirement determination set forth by the final May 3, 1999 decision. Due to the Bureau's age limit and the tentativeness of the March 2001 Special Agent class, if Malcolm is not admitted now, he may be forever precluded from entering the Bureau as a Special Agent. Over four years have passed as Malcolm's case has made its way through the administrative process. Further delay may require additional background and health checks and may even accompany a change in Malcolm's health status. A monetary award for denying his entry into the October 2000 class would not adequately remedy this loss of opportunity. This harm and the inadequacy of remedies for the harm, would constitute irreparable injury under *Sampson.*

It is time for Malcolm to receive the relief prescribed by the May 3, 1999 decision. If he is not admitted to the October 23, 2000 class, he is threatened with the irreparable injury of losing an opportunity to serve as an FBI Special Agent. The reciprocal burden on defendant is relatively minimal and bearing it is consistent with the public interest. *See Callicotte v. Carlucci*, 698 F.Supp. 944, 951 (D.D.C.1988) (*citing Shirey v. Devine*, 670 F.2d 1188 (D.C.Cir.1982)). Accordingly, the accompanying order grants Malcolm's motion for declaratory judgment and preliminary injunction and directs defendant to take all

necessary steps to execute the May 3, 1999 decision by admitting plaintiff to the Federal Bureau of Investigation Special Agent training class scheduled to begin October 23, 2000.

## AMENDED ORDER

On September 22, 2000, the plaintiff filed motions for a temporary restraining order and a preliminary and permanent injunction, seeking, inter alia, a declaration that the Department of Justice's May 3, 1999 decision awarding Malcolm back pay and ordering his placement in a Federal Bureau of Investigation Special Agent class was final and binding on the defendant. On October 2, 2000, the defendant filed its opposition to those motions; the plaintiff filed its reply on October 6, 2000; the Court held a hearing on the motions on October 10, 2000.

On October 19, 2000, this Court issued an memorandum and order in the above-captioned case declaring that the Department of Justice's May 3, 1999 decision is final and binding on the defendant and that pursuit of additional administrative remedies would be futile, granting the plaintiff's motion for a preliminary injunction, ordering the defendant to comply with the terms of the May 3, 1999 decision, ordering the defendant to admit the plaintiff to the Federal Bureau of Investigation Special Agent training class that began on October 23, 2000, denying the plaintiff's motion for a temporary restraining order as moot, and setting a status conference for November 8, 2000, at 2 p.m. to discuss further administration of the case, including the resolution of plaintiff's motion for a permanent injunction.

Upon further consideration, and for the reasons set forth in a memorandum to be filed, the Court has concluded that it was premature in the context of granting the plaintiff's motion for a preliminary injunction to also grant the plaintiff's requested declaratory relief and order the defendant to comply with the May 3, 1999 decision. Accordingly, the affected portions of the October 19, 2000 Order will be vacated; as counsel agreed during an October 24 telephone conference call, the plaintiff will file a motion for summary judgment as soon as possible. The defendant's response will be due 11 days thereafter.

The remaining portions of the October 19, 2000 Order will not be altered. As explained in the memorandum filed on October 19, 2000, the plaintiff has shown (1) a substantial likelihood of success on the merits of his claim that the May 3, 1999 decision is final and binding on the defendant, that additional administrative action would be futile, and, therefore, that he is entitled to a permanent injunction requiring the defendant to comply with the terms of that decision, (2) that he would suffer irreparable injury absent a preliminary injunction ordering him admitted to the FBI Special Agent class that began on October 23, 2000, (3) that the injunction would not substantially injure the defendant, and (4) that the public interest would be furthered by the injunction. *See City-Fed Financial Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 746 (D.C.Cir. 1995).

A final issue to consider is the defendant's demand for security pursuant to Federal Rule of Civil Procedure 65(c). Rule 65(c) states that "no restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained." Fed. R.Civ.P. 65(c). Although security is required, the amount of security lies within the Court's discretion. 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2954 (2d ed.1995). In deciding on an appropriate amount, relevant considerations include the hardship the posting of security would impose on the applicant, the public interest in the litigation, and the likelihood of success on the merits, at least

where it is extraordinarily high. *Crowley v. Local No. 82*, 679 F.2d 978, 1000 & n. 25 (1st Cir.1982), *rev'd on other grounds*, 467 U.S. 526, 104 S.Ct. 2557, 81 L.Ed.2d 457 (1984); *Temple University v. White*, 941 F.2d 201, 219–20 (3d Cir.1991), *cert. denied*, 502 U.S. 1032, 112 S.Ct. 873, 116 L.Ed.2d 778 (1992); *Borough of Palmyra, Bd. of Educ. v. F.C.*, 2 F.Supp.2d 637, 646 (D.N.J.1998).

The defendant initially sought a bond in the amount of $50,000 to $100,000. However, during an October 24 telephone conference, counsel for the defendant estimated the marginal cost of adding the plaintiff to the sixteen-week FBI Special Agent class that began on October 23, 2000, to be approximately $39,000 to $41,000, based on the following: $11,936 for salary; $7,000 for food and lodging, and $20,000–$22,000 for equipment and other miscellaneous expenses. However, a disposition of the plaintiff's motion for summary judgment (which his counsel expects to file by October 25, 2000) would either dissolve the preliminary injunction or merge it into a permanent one long before the end of the 16 week course. At this point, therefore, the security posted by the plaintiff need only reflect the marginal cost of having the plaintiff in the Special Agent class from October 23, 2000 through November 7, 2000, a period of just over two weeks. Security in the full amount of the marginal cost to the defendant would be approximately $5,000 (based on an approximate marginal cost of $2,500 per week). However, other relevant considerations weigh against setting the security at $5,000. First, according to the representations made by plaintiff's counsel during the October 24 telephone conference, the plaintiff has been unemployed and has minimal assets. Thus, requiring the plaintiff to post security in any amount will be a significant hardship. Second, the public has a strong interest in the effective enforcement of the Rehabilitation Act. *Callicotte v. Carlucci*, 698 F.Supp. 944, 951 (D.D.C.1988). Finally, the plaintiff has an extraordinarily high likelihood of success on the merits. Bal-

ancing these factors leads to the conclusion that the plaintiff must give security in the amount of $1,500, in the form of a cashier's check or a surety bond, by October 31, 2000.

Accordingly, it is this 25th day of October, 2000, hereby

ORDERED: that the portion of the October 19, 2000 Order declaring that the Department of Justice decision of May 3, 1999, is final and binding on the defendant and that additional administrative action is futile is VACATED; and it is further

ORDERED: that the portion of the October 19, 2000 Order directing the defendant to comply with the terms of the May 3, 1999 decision is VACATED; and it is further

ORDERED: that the status conference scheduled for Wednesday, November 8, 2000, at 2 p.m. is CANCELED; and it is further

ORDERED: that the portions of the October 19, 2000 Order granting the plaintiff's motion for a preliminary injunction, ordering the defendant to admit the plaintiff to the FBI Special Agent class that began on October 23, 2000, and denying the plaintiff's motion for a temporary restraining order as moot are confirmed and remain in effect; and it is further

ORDERED: that the plaintiff's motion for a permanent injunction remains under advisement pending the plaintiff's filing of a motion for summary judgment and of the defendant's opposition; and it is further

ORDERED: that the plaintiff shall file its motion for summary judgment, and serve it by hard or by fax upon the defendant, as soon as possible; and it is further

ORDERED: that the defendant shall file its response to the plaintiff's motion for summary judgment, and serve it by hand or by fax, 11 days after receiving the plaintiff's motion; and it is further

ORDERED: that pursuant to Federal Rule of Civil Procedure 65(c), the plaintiff

shall give security in the amount of $1,500, either by providing a cashier's check or posting a surety bond with the Clerk of the Court, by Tuesday, October 31, 2000; and it is further

ORDERED: that the Court will entertain a motion for additional security if it has not ruled on the plaintiff's motion for a permanent injunction by November 7, 2000.