**ATHLONE INDUSTRIES, INC., et al., Appellants,**

**v.**

**CONSUMER PRODUCT SAFETY COMMISSION, et al.**

**No. 82–1295.**

United States Court of Appeals, District of Columbia Circuit.

Argued 18 Jan. 1983.

Decided 13 May 1983.

As Amended 13 May 1983.

Michael F. Healy, Washington, D.C., with whom James Skelly Wright, Jr., and Janine Sweeney Frias, Washington, D.C., were on brief, for appellants.

William J. Roberts, Dept. of Justice, Washington, D.C., with whom John J. Powers, III, Dept. of Justice, and Michael J. Gidding, Consumer Product Safety Cᴄm'n, Washington, D.C., were on brief, for appellees.

Before WILKEY and BORK, Circuit Judges, and McGOWAN, Senior Circuit Judge.

Opinion for the Court filed by Circuit Judge WILKEY.

WILKEY, *Circuit Judge:*

Athlone Industries, Inc., appeals from the district court's dismissal of its suit to enjoin the Consumer Product Safety Commission from assessing civil penalties in an administrative proceeding. We reverse, concluding that the doctrine of exhaustion of administrative remedies does not bar the present suit. We also resolve the dispositive substantive issue in this case, holding that the Commission lacks the statutory authority to assess civil penalties in an administrative proceeding.

## I. Background

### A. *The Statutory Scheme*

The Consumer Product Safety Act[1] was enacted in 1972 as part of an effort to "protect the public against unreasonable risks of injury associated with consumer products."[2] Section 15(b) of that Act provides that a manufacturer, distributor, or retailer who obtains information reasonably supporting the conclusion that one of its products contains a defect which creates a "substantial product hazard"[3] must immediately inform the Consumer Product Safety Commission (the Commission) of the defect, unless it has actual knowledge that the Commission has already been adequately informed of the problem.[4] This notification requirement was imposed upon manufacturers, distributors, and retailers because they are often the first to receive information about hazardous consumer products.

The incentive to comply with the section 15 notification requirement is provided by section 19 of the Act, which makes it unlawful to "fail to furnish information re-

---

1. 15 U.S.C. §§ 2051–2083 (1976 & Supp. VI 1981).

2. *Id.* § 2051(b)(1) (1976).

3. The term substantial product hazard means either:

    (1) a failure *to comply* with an applicable consumer product safety rule which creates a substantial risk of injury to the public, or

    (2) a product defect which (because of the pattern of defect, the number of defective products distributed in commerce, the severity of the risk, or otherwise) creates a substantial risk of injury to the public.
*Id.* § 2064(a).

4. *Id.* § 2064(b).

quired by [section 15(b)]," [5] and by section 20, which provides civil penalties for violations of section 19.[6] Section 20(b) outlines the method which the Commission is to follow in collecting these civil penalties. In pertinent part, it provides: "In determining the amount of any penalty to be sought upon commencing an action seeking to assess a penalty for a violation of section [19(a)], the Commission shall consider [several enumerated factors]." [7] It is the scope and meaning of the term "action" in section 20(b) which form the basis for the present dispute.

## B. *The Present Litigation*

Athlone Industries, Inc.,[8] through its division Dudley Sports Co., distributed approximately 8000 automatic baseball pitching machines between 1962 and 1975. In July 1977, approximately two years after Athlone discontinued selling the machines, the Commission filed an action against Athlone in federal district court under section 12 of the Act, which authorizes the Commission to seek judicial intervention in order to protect the public from "imminent and unreasonable risk of death, serious illness, or severe personal injury." [9] The Commission alleged that defects in the pitching machines had already caused serious injury to several individuals,[10] and it asked the court to order Athlone to notify the public of the potential hazard and to take corrective action to prevent further injury to those who had already purchased the machines. The suit ended nearly a year later when the parties entered into a consent judgment which was approved by the district court.

On 24 May 1979, more than two years after termination of the section 12 action and four years after machine sales had ceased, the Commission advised Athlone that it believed Athlone had violated section 19(a) by failing to inform the Commission of complaints Athlone had received concerning the alleged defects in the machine. On 5 August 1980, another year later, the Commission initiated an *administrative* proceeding to assess the penalty for Athlone's alleged violation of section 19(a). Athlone moved to dismiss the administrative complaint, arguing that the consent judgment from the prior section 12 action was res judicata with respect to the allegations in the complaint, that the proceeding was barred by the applicable statute of limitations, that the institution of the administrative proceeding was an abuse of discretion, and that the Commission lacked jurisdiction to assess penalties in an administrative proceeding. The Administrative Law Judge denied Athlone's motion, and when the Commission failed to rule on Athlone's subsequent petition for mandamus, Athlone filed the present suit in federal district court.[11]

Athlone asked the district court to enjoin the Commission from continuing the administrative proceeding, reasserting the arguments it unsuccessfully advanced before the Administrative Law Judge. The district court, however, did not rule on these issues. Instead, it dismissed the complaint, concluding that Athlone had failed to exhaust its administrative remedies and that the case was not ripe for judicial review.

Athlone now seeks review of the district court's decision and, in addition, asks us to address the merits of its complaint. Because we conclude that the critical issue in this case—the Commission's authority to

---

5. *Id.* § 2068(a)(4).

6. *Id.* § 2069 (1976 & Supp. V 1981).

7. *Id.* § 2069(b) (Supp. V 1981).

8. Appellants are Athlone Industries, Inc., Harold Miller, and Charles Gilbert. Miller and Gilbert were respectively President and Vice-President of Athlone during the period relevant to this case. All appellants will be referred to as Athlone.

9. 15 U.S.C. § 2061(a) (1976).

10. The complaint alleged that, even when disconnected from a power source, the pitching arm of the machine would unexpectedly spring forward at great speed, striking nearby bystanders.

11. The Commission denied the petition for mandamus five days *after* the present action was filed in district court.

proceed administratively—was properly before the district court, we reverse that court's ruling. Because the interests of judicial economy will be served by a decision on the merits at this time, we also reach the dispositive substantive issue, concluding that the administrative proceeding initiated by the Commission should be enjoined.

## II. Exhaustion of Administrative Remedies

■ Anyone familiar with the subject of administrative law is aware of the well-established and oft-cited general rule that "no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted."[12] However, equally well-recognized is the concept that the doctrine of exhaustion is "not inflexible."[13] Application of the exhaustion doctrine "requires an understanding of its purposes and of the particular administrative scheme involved."[14] "[W]hen the reasons supporting the doctrine are found inapplicable, the doctrine should not be blindly applied."[15] After examining the reasons behind the exhaustion doctrine and the effect of its application in this case, we conclude that adherence to the general rule is not required in the present circumstances.

■ The exhaustion doctrine was designed primarily to prevent premature interruption of the administrative process.[16] In that regard it serves three main purposes. First, it preserves the autonomy of the administrative agency[17] by allowing the agency to apply its expertise and exercise its discretion in appropriate circumstances,[18] by giving the agency a chance to discover and correct its own errors,[19] and by discouraging "frequent and deliberate flouting of administrative processes [which] could weaken the effectiveness of an agency."[20] Second, application of the exhaustion doctrine aids judicial review which "may [otherwise] be hindered by the failure of the litigant to allow the agency to make a factual record, or to exercise its discretion or apply its expertise."[21] Third, requiring exhaustion in appropriate cases promotes judicial and administrative efficiency by prohibiting repeated interruptions of the agency proceeding[22] and by increasing the possibility that no judicial decision will be necessary, since the complaining party's rights may ultimately be vindicated at the agency level.[23] These purposes will not significantly be advanced by postponing consideration of the dispositive issue in this case—the Commission's statutory authority

12. *Myers v. Bethlehem Shipbuilding Corp.,* 303 U.S. 41, 50–51, 58 S.Ct. 459, 463, 82 L.Ed. 638 (1938) (footnote omitted). *See generally Lodge 1858, American Federation of Government Employees v. Paine,* 436 F.2d 882, 896 & n. 86 (D.C.Cir.1970); *SEC v. R.A. Holman & Co.,* 323 F.2d 284, 287 (D.C.Cir.), *cert. denied,* 375 U.S. 943, 84 S.Ct. 350, 11 L.Ed.2d 274 (1963).

13. *Ass'n of Nat'l Advertisers, Inc. v. FTC,* 627 F.2d 1151, 1156 (D.C.Cir.1979), *cert. denied,* 447 U.S. 921, 100 S.Ct. 3011, 65 L.Ed.2d 1113 (1980). *See generally Fitzgerald v. Hampton,* 467 F.2d 755, 768–69 (D.C.Cir.1972); *Sterling Drug, Inc. v. FTC,* 450 F.2d 698, 710–11 (D.C.Cir.1971).

14. *McKart v. United States,* 395 U.S. 185, 193, 89 S.Ct. 1657, 1662, 23 L.Ed.2d 194 (1969).

15. *Committee for GI Rights v. Callaway,* 518 F.2d 466, 474 (D.C.Cir.1975).

16. *McKart,* 395 U.S. at 193; 89 S.Ct. at 1662; *Sterling Drug, Inc. v. FTC,* 450 F.2d 698, 710 (D.C.Cir.1971).

17. "The exhaustion doctrine is, therefore, an expression of executive and administrative autonomy." *McKart,* 395 U.S. at 194, 89 S.Ct. at 1662 (quoting L. Jaffe, Judicial Control of Administrative Action 425 (1965)).

18. *McKart,* 395 U.S. at 194, 89 S.Ct. at 1662; *Committee for GI Rights,* 518 F.2d at 474; *Sterling Drug,* 450 F.2d at 710.

19. *McKart,* 395 U.S. at 195, 89 S.Ct. at 1663.

20. *Id.*

21. *Sterling Drug,* 450 F.2d at 710 (quoting *McKart,* 395 U.S. at 194, 89 S.Ct. at 1662) (brackets in original).

22. *McKart,* 395 U.S. at 194, 89 S.Ct. at 1662.

23. *Committee for GI Rights,* 518 F.2d at 474; *Sterling Drug,* 450 F.2d at 710.

to assess civil penalties in an administrative proceeding. Accordingly, the doctrine should not be used to bar consideration of that issue.

We note first that the scope of the Commission's statutory authority is strictly a legal issue. No factual development or application of agency expertise will aid the court's decision.[24] Nor will a decision by the court invade the field of agency expertise or discretion. "[W]here the only . . . dispute relates to the meaning of the statutory term . . . [the controversy] presents issues on which courts, and not [administrators] are relatively more expert." [25]

Moreover, it is highly unlikely that the Commission would change its position if the case were remanded to it. The Commission filed the complaint in the first place, presumably on the basis of its conclusion that it had jurisdiction to assess civil penalties administratively. It has defended that position before this and other courts.[26] And, after oral argument in this case, the Commission unanimously ruled that it had the authority to assess civil penalties in an administrative proceeding.[27] When resort to the agency would in all likelihood be futile, the cause of overall efficiency will not be served by postponing judicial review, and the exhaustion requirement need not be applied.[28]

Finally, there are unique circumstances in this case which make application of the exhaustion doctrine even more inappropriate. The original administrative complaint filed in this case was consolidated with a similar complaint filed against Advance Machine Company, the former manufacturer of the pitching machines. Almost immediately after the complaint was filed, Advance Machine filed a suit in federal district court in Minnesota, requesting that the court enjoin the agency proceedings on the grounds that the Commission lacked the authority to assess civil penalties in an administrative proceeding. The Eighth Circuit agreed with Advance Machine and the proceeding has been enjoined as to it.[29] It would be unfair and incongruous to require Athlone to return to the administrative proceeding when its co-respondent has been relieved of that responsibility on the basis of a co-ordinate federal court's resolution of the identical issue presented to us at this time. The desirability of avoiding such unfairness, the purely legal nature of the issue presented, and the likely futility of further resort to the Commission, all operate to convince us that it would be unwise to adhere to the general rule of exhaustion in this case. Accordingly, we reverse the district court's judgment.[30]

24. As the Supreme Court has noted, when the issue presented is one of statutory interpretation "judicial review would not be significantly aided by an additional administrative decision." *McKart,* 395 U.S. at 199, 89 S.Ct. at 1665. *See also Ass'n of Nat'l Advertisers, Inc.,* 627 F.2d at 1157; *Committee for GI Rights,* 518 F.2d at 474.

25. *Barlow v. Collins,* 397 U.S. 159, 166, 90 S.Ct. 832, 837, 25 L.Ed.2d 192 (1970) (quoting *Hardin v. Kentucky Utilities Co.,* 390 U.S. 1, 14, 88 S.Ct. 651, 658, 19 L.Ed.2d 787 (1968) (Harlan, J., dissenting) (brackets in the original)).

26. *See, e.g., Advance Machine Co. v. Consumer Product Safety Commission,* 666 F.2d 1166 (8th Cir.1981); *Robertshaw Controls Co., Inc. v. Consumer Product Safety Commission,* No. 82–0467–12 (E.D.Va. 15 Nov. 1982).

27. *Robertshaw Controls Co., Inc.,* C.P.S.C. No. 82–3 (29 March 1983).

28. *Committee for GI Rights,* 518 F.2d at 474 n. 20; *Dooley v. Ploger,* 491 F.2d 608, 614–15 (4th Cir.1974). *See also Lodge 1858, American Federation of Government Employees v. Paine,* 436 F.2d 882, 896 (D.C.Cir.1970) (dictum) and cases cited therein n. 97.

29. *Advance Machine Co. v. Consumer Product Safety Commission,* 666 F.2d 1166 (8th Cir. 1981).

30. The Commission argues that the present case is controlled by the Supreme Court's decision in *FTC v. Standard Oil Co.,* 449 U.S. 232, 101 S.Ct. 488, 66 L.Ed.2d 416 (1980). In *Standard Oil* the Court held that a plaintiff could not attack the FTC's motive in filing an administrative complaint until the administrative proceeding was completed, ruling that the FTC's decision to issue the complaint was not "final agency action" within the meaning of 5 U.S.C. § 704 (1976). The Court stressed that the agency's "averment of 'reason to believe' that [plaintiff] was violating the Act [was] not a definitive statement of position." *Id.* at 241, 101 S.Ct. at 493. The present case is, in that

We could at this point remand the case to the district court, but since the dispositive issue is "devoid of issues of disputed material·fact" and has "been fully briefed and argued on appeal," we conclude that "such a course is unnecessary and indeed would be unduly wasteful of judicial resources."[31] We therefore address the dispositive substantive issue.

## III. THE COMMISSION'S AUTHORITY TO ASSESS CIVIL PENALTIES IN AN ADMINISTRATIVE PROCEEDING

■ Section 20 of the Consumer Product Safety Act outlines the method·by which civil penalties resulting from a violation of section 19(a) are to be assessed. As amended in 1981, subsections (b) and (c) of that section provide:

(b) In determining the amount of any penalty to be sought upon commencing an action seeking to assess a penalty for a violation of section [19(a)], the Commission shall consider the nature of the product defect, the severity of the risk of injury, the occurrence or absence of injury, the number of defective products distributed, and the appropriateness of such penalty in relation to the size of the business of the person charged.

(c) Any civil penalty under this section may be compromised by the Commission. In determining the amount of such penalty or whether it should be remitted or mitigated and in what amount, the Commission shall consider [the same factors listed in § 20(b)].[32]

It is apparent that a three-step process is to be followed before a violator of section 19(a) is required to pay a civil penalty. First, a *determination* is to be made *of the amount of penalty to be sought* (applying the enumerated factors). Second, the penalty is to be *assessed in an action.* And finally, the Commission is authorized to *determine whether,* and to what extent, *the assessed penalty should be remitted* (again applying the enumerated factors). The Commission argues that it is empowered to perform all three of these steps. Athlone, on the other hand, maintains that while it is clear that the Commission can take the first and third steps, the second step—the actual assessment of the penalty—is to be performed by a court. The issue then is what type of "action" the Commission is to commence after it determines the amount of penalty it wishes to seek and before it determines whether, and in what amount, the penalty is to be remitted. We agree with the Eighth Circuit that the action referred to in section 20(b) is an action in court.[33]

We begin our analysis by noting the distinction commonly made between an "action" and a "proceeding." In *New York Gaslight Club, Inc. v. Carey*[34] the Supreme Court permitted recovery of attorneys' fees under Title VII of the Civil Rights Act of 1964 for services performed at the administrative level, reasoning that since the statute authorized such awards for "any action or proceeding," there could be "little doubt that fee awards are authorized for legal work done in 'proceedings' *other than court actions.*"[35] The underlying premise of the Court's rationale was its assumption that

respect, distinguishable. By filing a complaint in the present case, the Commission, for all practical purposes, made a final determination that such proceedings were within its statutory jurisdiction. This determination was confirmed in *Robertshaw Controls. See supra* note 27. Thus, with respect to the issue we address, the Commission has taken a definitive position, and *Standard Oil* is not controlling.

31. *Independent Bankers Ass'n v. Heimann,* 613 F.2d 1164, 1167 (D.C.Cir.1979), *cert. denied,* 449 U.S. 823, 101 S.Ct. 84, 66 L.Ed.2d 26 (1980). *See also Grosso v. United States,* 390 U.S. 62, 71–72, 88 S.Ct. 709, 715, 19 L.Ed.2d 906 (1968); *Leedom v. International Brother-*

*hood of Electrical Workers, Local Union No. 108,* 278 F.2d 237, 244 (D.C.Cir.1960).

32. 15 U.S.C. § 2069(b), (c) (Supp. V 1981).

33. *Advance Machine Co. v. Consumer Product Safety Commission,* 666 F.2d 1166, 1168 (8th Cir.1981).

34. 447 U.S. 54, 100 S.Ct. 2024, 64 L.Ed.2d 723 (1980).

35. *Id.* at 61, 100 S.Ct. at 2029 (emphasis added).

the term action referred to court action, while the term proceeding referred to administrative hearings. This distinction was further highlighted when the Court contrasted the language in Title VII with that of Title II, which permits attorneys' fees awards only with respect to "any action" commenced under Title II. "The omission of the words 'or proceeding' from [Title II] is understandable since enforcement of Title II depends solely on *court actions*." [36] Again, the implication is that when Congress uses the term action it is referring to a *court* action, not an administrative proceeding.[37]

We realize that too much can be made of this somewhat formalistic distinction, but at the same time, when Congress uses a legal term it presumably adopts "the meaning its use will convey to the judicial mind unless otherwise instructed." [38] We therefore feel justified in concluding that unless there is evidence to the contrary, Congress was referring to an action *in court* when it instructed the Commission to commence "an action seeking to assess a penalty for violation of section [19a]." [39]

The legislative history of the 1981 amendment and the practice under other safety legislation confirm, rather than undermine, our conclusion that the term action refers to actions in a court. The present version of section 20(b) was not included in either the House or Senate version of the 1981 amendments. It was introduced for the first time at the conference held to resolve the differences in the two bills. Thus, the only relevant explanation of that section is found in the conference report, which notes that the amendment requires "the agency to consider certain factors in determining the amount of a civil penalty *to be sought* upon commencement of an action ... [and] to consider the same five factors in *compromising* a civil penalty in an action for violation of section 19." [40] Although this language largely tracks the terms of section 20(b), it underscores the fact that the Commission was to utilize certain factors in determining how much to *seek* in an assessment action and to consider those same factors in deciding whether to *compromise* that amount. Noticeably absent is any reference to the Commission's authority to *assess* the civil penalty. Congress therefore appears to have limited the Commission's role in section 20 actions to that of prosecutor. The Commission can decide how much of a penalty to seek and it is authorized to compromise that amount, but it is the court that decides whether to assess the penalty and the amount to be assessed.[41]

**36.** *Id.* (emphasis added).

**37.** *See also Kennedy v. Whitehurst,* 690 F.2d 951, 964 (D.C.Cir.1982) (attorneys' fees *not* authorized for work in administrative proceedings under the Age Discrimination in Employment Act which refers only to an action).

**38.** *Morissette v. United States,* 342 U.S. 246, 263, 72 S.Ct. 240, 249, 96 L.Ed. 288 (1952).

**39.** 15 U.S.C. § 2069(b) (Supp. V 1981).

**40.** H.R.Rep. No. 97–208, 97th Cong., 1st Sess. 886–87, *reprinted in* 1981 U.S. Code Cong. & Ad. News 1248–49 (emphasis added).

**41.** The Commission argues that the legislative history of the 1981 amendment supports its interpretation of the Act, asserting that "Congress was well aware that the Commission assessed civil penalties administratively [before the 1981 amendment], yet gave no indication that, by adding the new section 20(b), it intended to divest the Commission of its authority to assess such penalties." Appellees' Brief at 42–

43 (footnote omitted). We reject this novel argument that Congress re-enacted an administrative interpretation of a statute by *amending* the provision of the statute in question. Before 1981, section 20(b) provided in pertinent part, "In determining the amount of such penalty or whether it should be remitted or mitigated and in what amount, the appropriateness of such penalty to the size of the business of the person charged and the gravity of the violation shall be considered." 15 U.S.C. § 2069(b) (1976) (*amended by* Pub.L. No. 97–35, 95 Stat. 357, 721 (1981)). If, as the Commission contends, Congress was aware that the Commission was assessing civil penalties in administrative proceedings before it amended the Act in 1981, *our* conclusion is strengthened because once having been made aware of the situation Congress expressly stated that the penalties were to be assessed "in an action." Therefore, if Congress was aware of the Commission's pre-1981 efforts to assess penalties administratively under section 20, it apparently directed the Commission to cease that practice.

Congress' decision to limit the Commission to a prosecutorial role in civil penalty actions is not unique. For example, the Secretary of Transportation is authorized to play that same role under the National Highway Traffic and Motor Vehicle Safety Act of 1966.[42] The Secretary can determine the amount of penalty he wishes to seek and he can compromise that amount.[43] But, "it is the court that determines whether a penalty shall be ordered and in what amount." [44] The same scheme appears to have been contemplated under section 20(b), the Commission must determine the amount of the penalty it wishes to seek and it is authorized to compromise that amount, but it is the court that decides whether, and in what amount, a penalty will be assessed.[45] The Commission's efforts to assess the penalty in an administrative proceeding should therefore be enjoined.[46]

## IV. CONCLUSION

Despite Athlone's failure to await completion of the administrative proceeding, we are entitled to consider its challenge to the Commission's authority to assess civil penalties in such a proceeding. The purposes of the exhaustion doctrine would not be served by postponing consideration of that issue and the Eighth Circuit's willingness to resolve the issue for Athlone's co-respondent

makes such a delay inequitable. We therefore reverse the judgment of the district court and address the merits of Athlone's complaint.

After reviewing the dispositive substantive issue, we conclude, as did the Eighth Circuit, that the Commission lacks the authority to assess civil penalties in an administrative proceeding. The Commission is free to commence an action in federal district court to assess the penalties it seeks and it is our understanding that this has already been done.[47] The other arguments advanced by Athlone should be considered in that proceeding. But the administrative proceeding presently pending against Athlone should be terminated.

*It is so ordered.*

---

**42.** 15 U.S.C. §§ 1381–1431 (1976 & Supp. V 1981).

**43.** *Id.* § 1398(b) (1976).

**44.** *Ford Motor Co. v. Coleman,* 402 F.Supp. 475, 479–80 (D.D.C.1975), *aff'd mem.,* 425 U.S. 927, 96 S.Ct. 1656, 48 L.Ed.2d 170 (1976).

**45.** The Commission argues that our reading of the statute renders section 20(c) meaningless which, according to the Commission, gives it authority to determine the final amount of the civil penalty. Appellees' Brief at 36–37. However, section 20(c) gives the Commission authority to *compromise, remit,* or *mitigate* the civil penalty, not the power to *assess it.* It is not inconsistent to empower the Commission to compromise a civil penalty without granting it the power to assess that penalty. Such a scheme merely limits the Commission to the role of prosecutor without authorizing it to be the judge.

**46.** Of course, Congress can, if it wishes, authorize the Commission to assess civil penalties.

*See, e.g.,* 30 U.S.C. § 820(i) (Supp. V 1981) ("The [Federal Mine Safety and Health Review] Commission shall have authority to assess all civil penalties provided in this chapter."); 29 U.S.C. § 666(i) (1976) ("The [Occupational Safety and Health Review] Commission shall have authority to assess all civil penalties provided in this section"). We merely conclude that in this instance Congress intended to limit the Commission to a prosecutorial role.

**47.** In order to preserve its claims against Athlone, the United States, on behalf of the Commission, filed suit in federal district court in New Jersey, seeking civil penalties for the same violation alleged in the administrative complaint in this case. *United States v. Athlone Industries, Inc.,* No. 82–493 (D.N.J. filed 19 Feb. 1982). On 26 July 1982 those proceedings were stayed pending the outcome of this case. As noted in text, our decision does not affect the Commission's right to proceed in that case.