**THE RELIABLE AUTOMATIC
SPRINKLER CO., INC.
Plaintiff,**

v.

**CONSUMER PRODUCT SAFETY
COMMISSION, Defendant.**

**Civil Action No. 01–00025(ESH).**

United States District Court,
District of Columbia.

Nov. 28, 2001.

Stephen Printiss Murphy, Reed, Smith, Shaw & McClay, L.L.P., Washington, DC, for plaintiff.

Steven Neil Gersten, U.S. Department Of Justice, Office of Consumer Litigation, Washington, DC, for defendant.

## MEMORANDUM OPINION

HUVELLE, District Judge.

The question before this Court is whether the commencement of an investigation by the staff of the Consumer Product Safety Commission ("CPSC") under the Consumer Product Safety Act, 15 U.S.C. § 2051 *et seq.* ("CPSA"), constitutes "final agency action" within the meaning of Section 704 of the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.* ("APA"). The CPSC enjoys regulatory jurisdiction over "consumer products," as defined by 15 U.S.C. § 2052(a)(1), and pursuant to this authority, the CPSC staff has been investigating sprinkler heads manufactured by The Reliable Automatic Sprinkler Co., Inc. ("Reliable"). Reliable seeks declaratory relief, claiming that its products are not "consumer products," and therefore not within the regulatory ambit of the CPSC. As explained more fully below, because the agency's action at this preliminary stage does not constitute final agency action, this Court lacks subject matter jurisdiction over Reliable's claim, and defendant's motion to dismiss must therefore be granted.

## BACKGROUND

Reliable manufactures the Model A Flush sprinkler head, which is incorporated into automatic fire sprinkler systems throughout the United States. The CPSC has been investigating the Model A Flush sprinkler head since 1999 to determine whether it performs reliably. The CPSC claims to have gathered evidence sufficient to support a "preliminary determination that . . . [the Model A Flush] sprinklers present a substantial product hazard, as defined by Section 15(a) of the Consumer Product Safety Act . . . ." (Memorandum in Support of Defendant's Motion to Dismiss [hereinafter Def.'s Mem.], Ex. A.) Although the CPSC staff has not yet made that preliminary determination pursuant to

15 U.S.C. § 2064(a), in a letter dated September 11, 2000, the staff communicated to Reliable its intention to do so. (Def.'s Mem. at 3–4.) In that same letter, the CPSC requested that Reliable undertake a voluntary "corrective action plan," as described in 16 C.F.R. § 1115.20(a). (Def.'s Mem. at 3.) To date, no corrective plan has been instituted. (*Id.* at 4.)

Instead, taking the offensive, Reliable filed a complaint on January 9, 2001, seeking declaratory relief. Specifically, Reliable seeks a declaration that its sprinkler heads are not "consumer products" within the meaning of the CPSA. On July 27, 2001, defendant filed a motion to dismiss, arguing that this Court has no jurisdiction over Reliable's claim because there has been no final agency action within the meaning of the APA.

### ANALYSIS

■ Review of agency action is available when specified by statute or for "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. In this case, defendant does not allege, nor could it, that the CPSA independently confers jurisdiction over the CPSC's preliminary administrative determination that Reliable's sprinkler head is a "consumer product ." *See generally* 15 U.S.C. § 2051 *et seq.* Therefore, to establish jurisdiction, Reliable must be able to point to some final agency action. *See American Telephone & Telegraph Co. v. EEOC,* 270 F.3d 973, 975 (D.C.Cir.2001) (district court's authority is limited to challenges to "final agency action"); *DRG Funding Corp. v. Secretary of Housing and Urban Dev.,* 76 F.3d 1212, 1214 (D.C.Cir.1996) (final agency action is "jurisdictional" requirement).[1]

The standard for determining if an agency's action is final and therefore reviewable was set forth by the Supreme Court in *FTC v. Standard Oil of Cal.,* 449 U.S. 232, 101 S.Ct. 488, 66 L.Ed.2d 416 (1980).[2] In that case, the Federal Trade

---

**1.** Reliable also claims that this Court has jurisdiction under 28 U.S.C. §§ 1331 and 1337. Neither Section 1331 nor 1337, however, provides an independent jurisdictional basis because Congress has provided a specific method for reviewing agency action in the APA, and that "specific statutory method, if adequate, is exclusive." *General Finance Corp. v. FTC,* 700 F.2d 366, 368 (7th Cir.1983) (holding that the procedures set forth in the APA are the exclusive method for challenging the Federal Trade Commission's jurisdiction; although plaintiff could assert lack of jurisdiction as a defense if FTC sought to enforce its subpoena in federal court). Reliable argues that *General Finance* is distinguishable from the instant case because the Federal Trade Commission Act at issue in that case "contains an exclusive scheme for judicial review of adverse agency action," whereas the CPSA does not. (Plaintiff's Memorandum of Points and Authorities in Opposition to Defendant's Motion to Dismiss [hereinafter Pl.'s Opp.] at 10 n. 4.) While the statutes may differ, the court in *General Finance* denied jurisdiction under Section 1331 on the basis of the gener-

al review mechanisms set forth in the APA. 700 F.2d at 368. Despite the fact that plaintiff's claim concerns the interpretation of a federal statute, obviously a federal question, (Plaintiff's Sur–Reply to Defendant's Motion to Dismiss [hereinafter Pl.'s Surreply] at 2 n. 2), this Court's jurisdiction "depends upon whether [plaintiff] can meet the requirements for APA review," because otherwise plaintiff would have no substantive cause of action. *See also Grucon Corp. v. CPSC,* No. 01–C–157, slip op. at 11 (E.D.Wis. September 19, 2001) (finding no jurisdiction over a similar challenge to the CPSC's pre-complaint investigatory activity).

**2.** Recently, this Circuit addressed this very issue, explaining:

An agency action is deemed final if it "mark[s] the 'consummation' of the agency's decisionmaking process" and determines "rights or obligations." The agency must have made up its mind, and its decision must have "inflict[ed] an actual, concrete injury" upon the party seeking judi-

Commission ("FTC") filed a complaint against a number of oil companies, averring that it had " 'reason to believe' that the companies were violating [federal law]." *Id.* at 234, 101 S.Ct. 488. Prior to a final adjudication of the complaint, the Standard Oil Company of California ("Socal") filed a complaint in federal court, asserting that the FTC had issued its complaint without "reason to believe" that there had been any violation. *Id.* at 235, 101 S.Ct. 488. The Court held that the agency's preliminary determination that it had "reason to believe" was not a final agency action or otherwise reviewable under the APA. *Id.* at 238, 101 S.Ct. 488. The FTC's averment of a "reason to believe" was not a "definitive statement of position"; rather, it "represent[ed] a threshold determination that further inquiry is warranted and that a complaint should initiate proceedings." *Id.* at 241, 101 S.Ct. 488. Furthermore, the Court noted that the FTC's decision had no "legal or practical effect, except to impose on Socal the burden of responding to the charges made against it," and while that burden might be substantial, it was different "in kind and legal effect" from the burdens imposed by conduct traditionally considered final agency action. *Id.* at 242, 101 S.Ct. 488. Since the FTC's issuance of a complaint was not final agency action within the meaning of Section 704 of the APA, it was "not judicially reviewable be-fore administrative adjudication concludes." *Id.* at 246, 101 S.Ct. 488.

■■■ As is clear from *Standard Oil,* the actions of the CPSC staff do not rise to the level of final agency action. Like the FTC in *Standard Oil,* the CPSC has conducted an investigation. The CPSC clearly believes that it has gathered sufficient evidence to support a preliminary determination that Reliable's sprinkler heads pose a "substantial product hazard" under the CPSA, 15 U.S.C. § 2064(a). (Def.'s Mem. at 3.) But unlike *Standard Oil,* where the FTC had made a precatory finding of "reason to believe" a violation of law had occurred, 449 U.S. at 234, 101 S.Ct. 488, the CPSC's investigation has not yet reached the administrative complaint stage.[3] (Def.'s Mem. at 4.) Because final agency action "emphatically does not mean the issuance of the administrative complaint," it cannot possibly encompass the investigatory steps that the CPSC staff has taken to date. *Abbs v. Sullivan,* 963 F.2d 918, 926 (7th Cir.1992) (finding no jurisdiction over challenge to the National Institute of Health's investigation into allegations of scientific misconduct prior to the filing of an administrative complaint); *see also Brandenfels v. Day,* 316 F.2d 375 (D.C.Cir. 1963) (finding no subject matter jurisdiction over the FTC's investigation when the

cial review. Such an injury typically is not caused when an agency merely expresses its view of what the law requires of a party, even if that view is adverse to the party. *AT & T,* 270 F.3d 973, at 975 (citations omitted).

**3.** The CPSC staff's efforts to date reflect only the initial stages of the CPSA regulatory process. *See, e.g., Grucon,* No. 01–C–0157, slip op. at 2–3. If the agency determines, after an initial investigation, that a commercial product presents a "substantial product hazard," it may vote to file an administrative com-plaint. *See* 16 C.F.R. § 1025.11. The complaint leads to a full adjudicatory hearing before an administrative law judge, with the right of appeal. *See* 15 U.S.C. § 2064(f); 16 C.F.R. § 1115.21(a); 16 C.F.R. Part 1025. If the agency prevails, it may then order the product's manufacturer to take corrective action to repair, replace, or refund the purchase price of the product. *See* 15 U.S.C. § 2064(d). Compliance with the order is mandatory under 15 U.S.C. § 2068(a)(5), and non-compliance may subject the violator to an enforcement action. *See* 15 U.S.C. §§ 2069, 2070, 2071(a) and (b).

agency had not yet taken any action against the plaintiff).

Implicit in its investigation is the CPSC's determination that Reliable's sprinkler heads constitute a "consumer product," and thus fall within the jurisdictional ambit of the CPSA. However, this belief is of no more legal significance than the CPSC's belief that it has sufficient evidence to show that Reliable's products are unreliable. As recognized by this Circuit in *AT & T,* at this stage of the investigation the agency has not "inflicted any injury" upon Reliable "merely by expressing its view of the law—a view that has force only to the extent the agency can persuade a court to the same conclusion." 270 F.3d 973, at 975 (holding no final agency action where the EEOC had issued a Letter of Determination stating its belief that AT & T had unlawfully discriminated against two employees, and warning the company that if conciliation efforts failed, the matter would be referred to the agency's legal department). Until the jurisdictional issue is adjudicated in an administrative proceeding, the CPSC simply has not made a definitive statement with any legal consequence within the meaning of *Standard Oil.*

Recently, in *Grucon Corp. v. Consumer Product Safety Commission,* No. 01–C–0157 (E.D.Wis. September 18, 2001), United States Magistrate Judge William E. Callahan, Jr. rejected a similar challenge to CPSC action on jurisdictional grounds. In that case, the CPSC staff informed the Grucon Corporation ("Grucon") that a fire protection sprinkler head, which had been manufactured by a now defunct subsidiary of Grucon's, presented a "substantial product hazard" under the CPSA. The staff requested that Grucon take voluntary corrective action, the company refused, and before the CPSC could initiate administra-

tive proceedings, Grucon filed suit seeking a declaration that it was a separate corporate entity, and therefore not responsible for the sprinkler heads. On the CPSC's motion, the court dismissed Grucon's complaint, holding that it had no jurisdiction because the CPSC staff's actions did not constitute final agency action. *Grucon,* No. 01–C–0157, slip op. at 12. The magistrate judge noted that "final agency action must 'impose an obligation, deny a right or fix some legal relationship as a consummation of the administrative process.'" *Id.* at 15 (citation omitted).

Reliable disputes this conclusion, arguing that even if the APA is the exclusive basis for jurisdiction, there is final agency action ripe for review. (Pl.'s Opp. at 13–14.) First, Reliable claims that the CPSC's letter of September 11, 2000 constitutes final agency action. (*Id.* at 14.) However, the CPSC's letter states no more than the intent of the agency's staff to make a preliminary determination that Reliable's sprinkler heads constitute a "substantial product hazard," and thus, it is arguably not even an agency action, much less a final one. *See AT & T,* 270 F.3d 973, at 975; *Borg–Warner Protective Serv. Corp. v. EEOC,* 245 F.3d 831, 836 (D.C.Cir.2001) (holding that an EEOC letter communicating that the agency had reasonable cause to believe that the employer had violated Title VII was not final agency action); *see also DRG Funding Corp. v. Secretary of HUD,* 76 F.3d 1212, 1214–15 (D.C.Cir.1996) (holding that a determination by an HUD official affirming an administrative law judge's decision that HUD could collect debts by administrative offset was not sufficiently final to confer subject matter jurisdiction).

Nonetheless, citing *Ciba–Geigy Corp. v. EPA,* 801 F.2d 430, 435–36 (D.C.Cir.1986),[4]

---

**4.** Reliable also relies on *Western Ill. Home*

*Health Care, Inc. v. Herman,* 150 F.3d 659

Reliable argues that because the letter is a sufficiently definitive statement of the CPSC's interpretation of the coverage of the CPSA, which will have a "significant practical and legal effect" on its business, that letter should be reviewable prior to the institution of any enforcement action. (Pl.'s Opp. at 14.) However, Reliable's reliance on *Ciba–Geigy* is misplaced. As an initial matter, *Ciba–Geigy* concerned ripeness, not a determination of what constitutes final agency action. Furthermore, the pragmatic concerns that motivated the Court's review in *Ciba–Geigy* are not present here. The *Ciba–Geigy* plaintiffs challenged the Environmental Protection Agency's position that any of the subject products not bearing a required labeling change were misbranded and that plaintiff was not entitled to a hearing. 801 F.2d at 433. Judicial review of that action was appropriate to determine if the statute at issue permitted the labeling changes without a hearing. *See id.* at 435. Reliable has not suffered a similar process-based injury, but will have the opportunity to argue its jurisdictional defense if the CPSC brings administrative action. As the *Ciba–Geigy* Court itself noted, judicial intervention is not appropriate "until administrative action has had a direct and immediate impact." *Id.* at 434.

Second, Reliable argues that the agency's "demand" for voluntary corrective action is a final agency action. (Pl.'s Opp. at 13.) Reliable offers no case law or argument in support of this point, and indeed,

the position is irreconcilable with *Standard Oil.* If an administrative complaint is not a "definitive statement" of the agency's position, *Standard Oil,* 449 U.S. at 241, 101 S.Ct. 488, a decision to investigate cannot be elevated into a final agency action. Reliable's argument would open the door to collateral attacks or preemptive strikes even prior to the initiation of administrative action, assuming that the regulatory target could make a colorable jurisdictional challenge. Obviously, this would frustrate the carefully crafted mechanism for judicial review that is established by the APA. *See AT & T,* 270 F.3d 973, at 975 (permitting premature challenge "would disrupt the administrative process in a manner clearly at odds with the contemplation of the Congress"). Moreover, as discussed herein, Reliable faces no legal detriment from the CPSC's request to take corrective action; Reliable remains free to decline the invitation, *see* 16 C.F.R. § 1115.20(a), and it may challenge the agency's underlying claim of jurisdiction if and when the CPSC brings an enforcement action. *Standard Oil* unambiguously holds that this harm is not equivalent "in kind or legal effect" to final agency action. 449 U.S. at 242, 101 S.Ct. 488.

Third, Reliable believes that an alleged threat by the CPSC staff to bring "an administrative complaint on an expedited basis" is a final agency action. (Pl.'s Opp.

(7th Cir.1998). (Pl.'s Opp. at 14.) To the extent that *Herman* provides a more permissive standard for final agency action than *Standard Oil,* it is not good law. However, the facts of *Herman* are distinguishable from this case. The *Herman* court determined that a letter issued by the Department of Labor concluding that two employers were "joint employers" for the purposes of the Fair Labor Standards Act was final agency action under the APA. The court held that the letter was

not "tentative or interlocutory in nature" and would inflict "legal consequences" if the two employers ignored the letter's command and did not aggregate their shared employees' hours for the purposes of overtime compensation. *Herman,* 150 F.3d at 663. Unlike the challenger in *Herman,* Reliable cannot show such a " 'sufficiently direct and immediate' " effect on its " 'day-to-day business.' " *Id.* at 662 (citation omitted).

at 13–14.) This argument is plainly frivolous in light of *Standard Oil.*

Finally, Reliable maintains that the CPSC staff letter, the request for corrective action, and the threat to expedite a complaint, when taken together, constitute reviewable action. (*Id.* at 14.) Why three non-reviewable actions add up to final agency action is not clear, but perhaps the combination makes very "definite" the CPSC's apparent belief that it enjoys jurisdiction over Reliable's sprinkler heads. In its surreply, Reliable refines this argument and claims that these actions and similar proceedings against similarly situated manufacturers demonstrate that the CPSC has made a final interpretation of "consumer product" to include Reliable's sprinkler heads, and this determination is judicially reviewable. (Pl.'s Surreply at 7 (discussing *Ciba–Geigy,* 801 F.2d 430).) Even if the agency's opinion regarding its jurisdiction over Reliable's products is fixed, *Standard Oil* establishes that finality requires that the purported action have sufficient "legal force" and practical effect, which Reliable has not demonstrated. *Standard Oil,* 449 U.S. at 242, 101 S.Ct. 488. Until the CPSC does something with more definite consequences than merely expressing a tentative belief that it has jurisdiction, this Court is without power to review its deliberations.

As noted, Reliable has failed to demonstrate that the CPSC's assumption of jurisdiction inflicts costs commensurate "in kind and legal effect" with final agency action. *Standard Oil,* 449 U.S. at 242, 101 S.Ct. 488. This is especially clear when one considers that the CPSC has not taken *any* enforcement action against Reliable. (Def.'s Mem. at 4.) Instead, the

CPSC has requested that Reliable take "voluntary corrective action," and submit plans regarding that action to the CPSC. (Def.Mem., Ex. A.)[5] Reliable is free to disregard this request, understanding that the consequence of doing so *might* be an enforcement action. If the CPSC proceeds and enters a determination that Reliable's sprinkler heads constitute substantial product hazards, and initiates administrative proceedings, Reliable will bear the burden of defending itself in that forum. *Standard Oil* makes clear that the cost of defending against an enforcement action is not the kind of burden associated with final agency action. 449 U.S. at 242, 101 S.Ct. 488.

In response, Reliable argues that it faces a "Hobson's Choice" because either compliance or non-compliance with the CPSC's request for voluntary corrective action will inflict reputational and economic injury. (Pl.'s Opp. at 15–16.) Of course, if voluntary corrective action is undertaken, plaintiff cannot argue that it has suffered a legally cognizable harm. As for the harm arising from non-compliance, the CPSC has not even made a preliminary finding that Reliable's products constitute a substantial product hazard, much less initiated administrative proceedings or an enforcement action. Furthermore, no corrective action could be ordered unless the CPSC first prevailed at an administrative proceeding. (*See* Reply Memorandum in Support of Defendant's Motion to Dismiss [hereinafter Def.'s Reply] at 18.) Prior to filing a complaint, or even making a determination of a "substantial product hazard" necessary to invoke its enforcement authority, CPSC investigative steps do not penalize Reliable for non-compliance with

---

**5.** As Reliable points out, "these 'voluntary remedial actions,' may include execution of a CPSC-approved 'corrective action plan,' entailing press releases, televised announce-

ments, in-store posters, repairs and replacements." (Pl.'s Opp. at 4 (quoting 16 C.F.R. § 1115.20(a)).)

48

the agency's voluntary action request. *See Abbs*, 963 F.2d at 926–27 (suggesting that agency investigations alone are unlikely to present a dilemma penalizing both compliance and non-compliance).

▮ Reliable also alleges potential reputational harm and a resulting loss of business, arising from a possible negative reaction to any press release that the CPSC might issue if it initiates an administrative proceeding. (Pl.'s Surreply at 5–6.) The Court is not insensitive to these concerns, but they provide an insufficient basis upon which to exercise jurisdiction. *See Abbs*, 963 F.2d at 927–28 (noting that "no one likes to be accused of misconduct," but rejecting challenge to placement of scientist's name on a list of parties subject to NIH investigation). Reliable has failed to adduce any injury other than the inevitable reputational harm associated with the filing of a complaint. The product under investigation, the Model A Flush sprinkler head, has not been manufactured since 1983. (Pl.'s Opp. at 2.) Reliable does not even attempt to explain how a public announcement regarding this older model would "cause severe damage to [Reliable's] business, 'including sales, good will and certain of its business relationship.' " (Pl.'s Opp. at 6 (quoting *Kaiser*, 414 F.Supp. at 1055, 1056).) Reliable also suggests that the costs of corrective action might threaten the viability of its business, noting that the execution of a corrective action plan

"led [it's competitor,] Central Sprinkler[,] to the brink of financial collapse." (Pl.'s Opp. at 16; *see also* Pl.'s Surreply at 5–6.) Of course, before the CPSC can compel any action from Reliable, the company will have the opportunity to challenge the agency's findings in an administrative hearing, with a right of appeal. The rather distant prospect of injury to Reliable does not justify judicial intervention at this unusually early stage.[6]

Despite the clear import of *Standard Oil*, Reliable argues that several District of Columbia Circuit opinions handed down in the mid–80's support jurisdiction.[7] Under Reliable's theory, the question of CPSC jurisdiction over Reliable's sprinkler systems is a legal question, the resolution of which does not require the development of a factual record at the agency level. (Pl.'s Opp. at 11–12.) Reliable essentially asks this Court to grant an exception from the rule of *Standard Oil* based on cases where the D.C. Circuit has been willing to recognize an exception to the well-established doctrines of ripeness and exhaustion of administrative remedies. *See, e.g., Athlone Indus., Inc. v. CPSC*, 707 F.2d 1485 (D.C.Cir.1983) (holding exception to exhaustion requirement appropriate for purely legal question); *Ciba–Geigy Corp. v. EPA*, 801 F.2d 430 (D.C.Cir.1986) (holding that claim regarding what procedures were necessary for a change in labeling

**6.** Plaintiff's citation to *Kaiser Aluminum & Chemical Corp. v. CPSC*, 414 F.Supp. 1047, 1056 (D.C.Del.1976), *rev'd on other grounds*, 574 F.2d 178 (3d Cir.1978), is not persuasive. In *Kaiser*, the court held that a manufacturer could challenge certain statements made by the CPSC because the agency allegedly had failed to comply with CPSA requirements regarding public statements. The CPSA requires the agency to provide advance notice and a summary of the information to be released to affected manufacturers, 414 F.Supp. at 1051–52, and the CPSC allegedly failed to do so before publishing a news article, a

technical fact sheet, a press release, and a notice-of-proceeding regarding aluminum wiring systems. *Id.* at 1052. Reliable has not alleged a similar violation of CPSA requirements in the conduct of the CPSC's investigation to date.

**7.** *See, e.g., Athlone Indus., Inc. v. CPSC*, 707 F.2d 1485 (D.C.Cir.1983); *Ciba–Geigy Corp. v. EPA*, 801 F.2d 430 (D.C.Cir.1986); *Atlantic Richfield Co. v. U.S. Department of Energy*, 769 F.2d 771 (D.C.Cir.1985).

requirements was ripe for review); *Atlantic Richfield Co. v. Department of Energy,* 769 F.2d 771 (D.C.Cir.1984) (holding that claim for declaratory and injunctive relief regarding an administrative order imposing discovery sanctions was ripe for review). These cases offer no guidance as to what constitutes final agency action because they do not consider the issue. Furthermore, each of the cases is distinguishable, and thus, they do not persuade this Court that an exception from the "final agency action" requirement is appropriate here. *See Grucon,* No. 01–C–0157, slip op. at 16–20 (discussing and rejecting application of these same cases to a similar question of jurisdiction and final agency action). The Court will address each decision *seriatim.*

Reliable cites *Athlone,* arguing that this decision supports the Court's exercise of jurisdiction, since the question is purely a legal one—the interpretation of the statutory term "consumer product," and as recognized by *Athlone,* such a controversy " 'presents issues on which courts, and not [administrators] are relatively more expert.' " (Pl.'s Opp. at 12 (quoting *Athlone Indus.,* 707 F.2d at 1489).) In *Athlone,* the Court held that, because of "unique circumstances," the doctrine of exhaustion of administrative remedies did not bar suit to determine an agency's statutory authority to assess civil penalties in an administrative hearing. 707 F.2d at 1489. Those circumstances were the "purely legal nature of the issue presented," the "likely futility of further resort to [administrative proceedings]," and the fact that another defendant in identical circumstances had won a decision from the Eighth Circuit enjoining the agency from assessing civil penalties. *Id.* The Court reasoned that it would be "unfair and incongruous to require Athlone to return to the administrative proceeding when its co-respondent has been relieved of that responsibility on the basis of a co-ordinate federal court's resolution of the identical issue presented to us at this time." *Id.*

Given the dissimilarities between this case and *Athlone,* Reliable cannot rely on *Athlone* to support its preemptive strike (and avoidance of the inevitable consequence of the doctrine of exhaustion if and when a complaint is brought by the CPSC). First, *Athlone* concerned a collateral legal challenge to the CPSC's authority to assess civil penalties *after* a proceeding had been initiated and *after* a motion to dismiss the complaint on jurisdictional grounds had been denied by an administrative law judge. In contrast, this case concerns a pre-complaint challenge to an agency's jurisdiction. Thus, *Athlone* provides no support for Reliable's claim that the jurisdictional challenge may first be brought in district court, as opposed to being raised first in an administrative proceeding. *See also Abbs,* 963 F.2d at 927 (pre-complaint investigatory actions are not actionable "when the only harm the challenger seeks to avert is the inconvenience of having to go through the administrative process before obtaining a definitive declaration of his legal rights").

Second, the determination of jurisdiction in this case is not a "purely legal" question within the meaning of *Athlone,* for a determination of whether sprinkler systems are "consumer products" within the meaning of the CPSA and the regulations promulgated thereunder presents a number of factual issues. In *Athlone,* the Court examined Section 20 of the CPSA to determine what process the statute required before a civil penalty could be levied. The question was purely one of statutory interpretation. In this case, Reliable argues that no factual record need be developed, (Pl.'s Opp. at 12.), citing *United States v. Anaconda Co.,* 445 F.Supp. 486, 491 n. 4 (D.D.C.1977) (holding that what consti-

tutes "consumer products" is a legal issue) and *Kaiser Aluminum & Chemical Corp. v. CPSC*, 414 F.Supp. 1047, 1056 (D.C.Del. 1976) (jurisdiction over consumer products to be determined on the basis of "the statute and its legislative history"), *rev'd on other grounds*, 574 F.2d 178 (3d Cir. 1978). Of course, the legal issue underlying Reliable's claim, that its products are not "consumer products," is well within the competence of this Court to answer, but that is not the sole issue presented here. In addition to interpreting the statutory term "consumer product," the Court will have to consider the application of that term to a discrete. product—Reliable's sprinkler heads. Defendant argues, and this Court agrees, that this case is not about defining the jurisdictional boundaries of the CPSC's authority, but whether the Reliable sprinkler heads fall within those boundaries. (Def.'s Reply at 7.) To determine whether Reliable's sprinkler heads are a "consumer product," this Court would have to consider whether they were "produced or distributed ... for the personal use, consumption or enjoyment of a consumer in or around a permanent or temporary household or residence, a school, in recreation, or otherwise ...." 15 U.S.C. § 2052(a)(1). Reliable claims that their sprinkler heads do not meet this definition (Pl.'s Opp. at 1, 2), defendant disputes this claim (Def's Reply at 7–8), and both parties rely on factual assertions to prove their claims.[8]

Third, it is not "unfair and incongruous" to ask Reliable to await an administrative determination. *Athlone*, 707 F.2d at 1489.

In *Athlone*, the D.C. Circuit was faced with a unique situation where one respondent would be forced to answer an administrative complaint, while an identically-situated respondent would not because the Eighth Circuit had decided to answer the question of the agency's statutory authority. *Id.* Faced with this unfairness, the Court decided to address the question that the Eighth Circuit had answered. There is no unfairness here. Reliable has not been selectively burdened by the CPSC's investigation and threatened complaint. On the contrary, similarly situated sprinkler producers have been subjected to the administrative process. *See* note 8, *supra;* (Pl.'s Opp. at 4–6); *see also Grucon*, No. 01–C–157 (E .D. Wis. September 19, 2001).

Similarly, Reliable relies on *Ciba–Geigy Corp.*, 801 F.2d 430, to argue that a "purely legal" question can be addressed by the district court prior to an administrative proceeding. (Pl.'s Opp. at 12–13.) Again, *Ciba–Geigy* is clearly distinguishable from the instant case. First, as noted above, *Ciba–Geigy* involved the issue of ripeness. Because the EPA had definitively stated in response to a demand for a hearing on certain labeling changes that no hearing would be required and "gave no indication that [the decision] was subject to further agency consideration or possible modification," the ripeness question did not present "the slightest danger that judicial review [would] disrupt the orderly process of administrative decision-making." *Ciba–Geigy*, 801 F.2d at 437. Additionally, the parties agreed, unlike the situation here, that the question presented was "purely

---

8. In fact, this determination as to a different sprinkler head manufactured by the Central Sprinkler Company was made by a CPSC administrative law judge. *See Central Sprinkler Co.*, CPSC Docket No. 98–2, Order on Mot. to Dismiss Complaint (CPSC May 15, 1998). There, the administrative law judge recognized that Central Sprinkler's sprinkler

heads were "consumer products" relying, in part, on whether the sprinklers were installed in a "home," *id.* at 15, whether the sprinkler heads were "distinct" component parts, *id.* at 11, and whether consumers were "exposed to hazards associated with the products." *Id.* at 12.

legal," and that no further factual development was required. *Id.* This case is different because efficient administrative decision-making is more directly threatened, and there is no agreement that the issue is purely legal.

Finally, Reliable argues that *Atlantic Richfield Co.*, 769 F.2d 771, supports jurisdiction. (Pl.'s Opp. at 13.) Again, factual and legal dissimilarities prevent application of that holding to the facts of this case. As in *Athlone*, the issue was exhaustion and not jurisdiction. Second, as in *Athlone*, the administrative proceedings in *Atlantic Richfield* were already well underway when the plaintiff sought judicial relief and began to wage a collateral attack on discovery sanctions which had been imposed at an administrative proceeding, claiming that the Department of Energy lacked the authority to adjudicate questions concerning remedial orders and to impose sanctions. Significantly, plaintiff waited to bring its action in district court until *after* the agency first rejected its claim; whereas, in this case, Reliable has not yet tested its claim before the agency, and in fact, it could not because there is no pending proceeding. Furthermore, the plaintiff in *Atlantic Richfield* challenged the agency's ability to impose sanctions, not the merits of the agency's decision to do so. Reliable does not ask this Court to consider whether the CPSC generally has authority to conduct investigations and take enforcement actions; rather, Reliable asks for a determination as to whether the agency has the requisite authority to conduct an investigation of its particular product.

In its surreply, Reliable emphasizes the futility of pressing its jurisdictional argument before the agency. (Pl.'s Surreply at 2.) As an initial matter, Reliable's position is not yet futile because it will "have adequate opportunity during the administrative process to address [the] issue," and the CPSC must demonstrate jurisdiction to prevail in the proceeding. *Grucon*, No. 01–C–0157, slip op. at 16. Reliable claims that the opportunity to argue jurisdiction in the administrative proceeding is an empty promise, because it is a foregone conclusion that the agency will find against the company. (Pl.'s Opp. at 17–19.) However, if the application of the term "consumer products" to Reliable's sprinkler heads turns on factual issues, (Def.'s Reply at 18), then the company may be able to persuade an administrative law judge that the manner in which its sprinklers are produced and marketed, and the locations in which there are installed, (Pl.'s Opp. at 2), demonstrate that they are not "consumer products."

■ Moreover, even if Reliable's argument will not succeed, futility alone does not excuse the need for final agency action. Reliable cites a number of cases illustrating the importance of demonstrating futility when seeking an exemption from the exhaustion requirement. *See, e.g., Randolph–Sheppard Vendors of Am. v. Weinberger*, 795 F.2d 90, 105 (D.C.Cir. 1986) (exhaustion not required when adverse agency decision certain); *Athlone*, 707 F.2d 1485 (permitting exception to exhaustion requirement when agency unlikely to change its position); *Atlantic Richfield Co.*, 769 F.2d 771 (same). However, plaintiff cites no case for the proposition that futility excuses the need for final agency action. Exemption from the finality requirement imposed by Section 704 of the APA is much more likely to disrupt the administrative and judicial review processes established by Congress. *Cf. AT & T*, 270 F.3d 973, at 975. Before there has been final action, determining futility will often amount to little more than a guessing game regarding agency intent and the likely outcome of administrative proceed-

ings. Thus, any prudential concern regarding futility cannot overcome the APA's clear requirement for final agency action.

### CONCLUSION

For all of the above reasons, Plaintiff's reliance on the D.C. Circuit case law to evade the holding of *Standard Oil* is unpersuasive. The agency staff's investigatory steps do not rise to the level of "final agency action" within the meaning of Section 704 of the APA. Thus, this Court lacks subject matter jurisdiction, and the action must be dismissed.

### *ORDER*

This matter is before the Court on defendant's Motion to Dismiss [8–1] and plaintiff's opposition thereto. For the reasons stated in the Court's Memorandum Opinion, it is hereby

**ORDERED** that defendants' motion is GRANTED as to all counts of plaintiff's complaint; and it is

**FURTHER ORDERED** that plaintiff's complaint is dismissed with prejudice.